*EXHIBIT A*

I, Dana V. Wilcox do hereby swear and affirm the following facts:

1.   That Owen C. Meddles knew my Mother and Father.  Owen Meddles had a close
     working relationship with my Father from WWII, and  from the 1950s to the 1970s
     while  they worked together on Defense Mobilization Projects;

2.   I met Owen Meddles (circa 1978-1979) while seeking financing for projects
     (Washington, D.C. and Richmond, VA ) via his Home and Commercial Banking
     and Insurance Companies;

3.   Owen Meddles and I developed a strong relationship based on many mutual
     interests, i.e., construction projects, property in Washington, D.C., et al...  During
     which Owen confided to me numerous past and present government projects
     and the unique arrangement he (Owen Meddles) had with Willaim B. Casey ---
     Bill Casey directed Internal Government Projects [i.e.,POLLY and CO, HAIR and
     CO, etc.] and Owen Meddles directed External Special Projects---which I was
     exposed to their existence and operation;

4.   During this time (circa 1979-1981) there were no formal contracts or comingling
     funds of Projects discussed or of possible arrangements regarding  future
     Projects between myself and Owen Meddles, and I received no compensation;

5.   Also during the aforementioned discussions, I confided to Owen Meddles of the
     existence of a Wilcox family account within a Japanese Bank which had
     extensive funds derived from royalty payments paid to my father for shipbuilding
     designs and wielding applications --- which Owen Meddles verified via his U.S.
     government connections;

6.   The Chinese World Trade Agreement Project was approved by President
     Reagan (U.S.A.), Her Majesty Elizabeth II (Queen of England), and Prince
     Phillip,The Duke of Edinburgh, (U.K.) for the purpose of providing a financial
     facility, via British funding, to help China create a U.S. Dollar financial platform
     that was not government financed or controlled;

     a.  President Reagan handed the Project to William Casey and Owen
         Meddles.  Owen Meddles secured the Wilcox Funds in the Japanese Bank
         to be used as the "seed money" that would purchase new issue U.S.
         bonds for the financial platform in a revolving forfaiting process;

**INITIAL / DATE** _Dw 6/16/2_                          **1 | P a g e**

b.  Dana V. Wilcox was tasked with coordinating the U.S. side of the Project.  William L. H. Bonney (BOLDCAP) would bond the total Project, and Barclays Bank (London) would issue the U.S. bonds with an English Wrap;

c.  This process, facility, and platform was approved by President Reagan via telephone conversations with the individual principals.  Col. Kok Howe Kwong, (People's Republic of China) and Leo E. Wanta (U.S.) were appointed to be the External operators of the Project --- coordinated thru Dana V. Wilcox as U.S. Accounting;

d. The Project was completed in the late 1980s;

7.  During the implementation of this Project, it was found that I needed to have a heart valve replacement, and Owen Meddles's health was also failing.  It was decided to retire from Special Projects and wind down current projects;

a.  Agreements were completed between Owen Meddles and William B. Casey, representing the government and government agencies (i.e., CIA, NSA, etc.) regarding the division of projects and their resulting funds;

b.  As a result of the aforementioned agreements, Owen Meddles established DELMARVA TIMBER TRUST (MD) and transferred his projects, assets, real estate holdings and all other assets to DELMARVA TIMBER TRUST (MD) --- per agreements;

c.  All other projects and proceeds, i.e., POLLY and CO, HAIR and CO, etc. were placed under the direction of William B. Casey, et al..;

8.  At this time, Willam L. H. Bonney, et al., implemented the transfer of the Wilcox Funds, from the Japanese Bank, to Citibank (Trenton, NJ) under the direction of Owen Meddles for and on behalf of Dana V. Wilcox, et al., via THEE CONSULTANCY, INC. (REF:  ENCL 3, 4, and 5);

9.  Owen Meddles transferred the Wilcox Funds, via THEE CONSULTANCY, INC/DIVERSIFIED INDUSTRIAL TRUST contract signed and dated on October 24, 1990 (REF; ENCL 3) by the purchase and transfer of GNMA securities on December 18-19, 1990 (REF: ENCL 3, 4, and 5) and other banking agreements;

10.  These identified GNMAs (REF:  ENCL 1, Section 3(a)), and contracts (REF: ENCL 2, 3 ,4, and 5) were transferred to Prudential Bache Securities (REF: ENCL 1, Section 4) for verification.  Subject to the NASD/SEC Broker/Dealer requirements, the GNMAs and contracts were returned to Owen Meddles's accounts for portfolio management due to Dana V. Wilcox's ill health;

**INITIAL / DATE** _[handwritten initials and date]_                    **2 | P a g e**

11. Owen Meddles died on 17 October 1992, leaving his estate and holdings under DELMARVA TIMBER TRUST (A REAL ESTATE INVESTMENT TRUST) established on April 1, 1986 (REF:  ENCL 11[A] entitled "Application for Release of Blocked Funds License Application Submitted to the U.S. Department of Treasury Office of Foreign Assets Control," dated 25 April 2001, submitted by Michael C. Cottrell);

12. From early 1990 through 1996, I was essentially confined at home while awaiting a heart transplant --- thus, not active in business activities.  The heart transplant procedure was accomplished in 1996, and later in 2000 received a new kidney;

13. During 1998, with better health, an investigation regarding the Delmarva/Meddles accounts was attempted by me --- only to discover they were in complete disarray and no competent person was in charge of the accounts.  Don Meddles (brother to Owen Meddles) claimed authority and knowledge, but could not prove he had either;

14. Given this situation, a reconstruction effort, (1998), was undertaken by myself and Michael C. Cottrell to identify, locate, and ascertain the values of each of the Delmarva, Delmarva Timber Trust (A Real Estate Investment Trust ), Owen Meddles, and Wilcox accounts.  Using Dana Wilcox's recollections of the Projects and Mr. Cottrell's through review of  transactions, via Lexis-Nexis, and other sources --- a list of accounts and assets was constructed;

15. The aforementioned list of this reconstruction process resulted in a compiling of a Probate Report (REF: ENCL 11[B]) "In The Matter of a Petition", which was filed with The Circuit Court of Anne Arundel County (MD) on 28 January 2004 – so that an orderly collection of the assets and funds could be properly and legally obtained;

16. Dana V. Wilcox, (Financial Consultant), and Michael C. Cottrell, (Secretary, Treasurer, and Trustee), physically delivered and paid for the recording of the Articles of Amendment to the Trust with a newly elected Board of Trustees, therefore, reinstating the Delmarva Timber Trust (A Real Estate Investment Trust) as an Active Trust with the Maryland Department of Assessments and Taxation on 28 March 2001;

17. A bank account was established at BB&T Bank (Annapolis, MD) in the name of Delmarva Timber Trust by Dana V. Wilcox and Michael C. Cottrell for the deposit of the collected funds derived from the aforementioned Petition;

**INITIAL / DATE**

18. While Mr. Cottrell and I were following legal procedures, Don Meddles and Attorney Wesley Sine had set up and operated "Delmarva Timber Trust (Marion, Ohio)" and had set up bank accounts to deposit funds secured from POLLY and HAIR project accounts using the documentation developed by Michael C. Cottrell during our reconstruction process for the Probate Report;

19. The resultant of the activities of Messrs. Sine and Meddles led to <u>Wesley F. Sine, Trustee, etc. v. The Bank of New York, et al.</u> (REF:  ENCL 7);

20. AMENDED ORDER from Judge Carr to Dana V. Wilcox, (REF: ENCL 9), dated 6 December 2021, stating that I was not a party to the aforementioned case and am not subject to the Permanent Injunction Order (REF:  ENCL 7);

21. Letter from Bank of New York Mellon, Vice President Anthony B. Mancuso to Dana V. Wilcox, dated January 21, 2022, (REF:  ENCL 10), stating that "BNYM does not hold any funds of the trust...", and that this matter is closed;

22. Letter from Dana V. Wilcox to Mr. Mancuso (Bank of New York) dated 23 January 2022, (REF:  ENCL 11), detailing Hearing Exhibits from <u>Wesley F. Sine, Trustee, etc. v. The Bank of New York, et al.</u>;

23. Bloomberg Screen (17 February 2022) identifying GNMA CUSIP NO. 36217GF28 and GINNIE MAE Data Search Summary (REF:  ENCL 12);

24. Bloomberg Screen (17 February 2022) identifying GNMA CUSIP NO. 3616GUZ9 and GINNIE MAE Data Search Summary (REF:  ENCL 13);

25. Email from Jonathan Hughes, GNMA Supervisor Sr. Account Executive, Office of Issuer and Portfolio Management, on 25 February 2022, (REF:  ENCL 14), notifying Dana Wilcox that a GNMA review is in progress by the Office of Security Operation;

26. Email from Ms. Chastity M. Abrom, Senior Business Analyst, Office of Securities Operations (GINNIE MAE), to Dana Wilcox stating the results of a search for the above referenced GNMA CUSIPS, et al. (REF:  ENCL 15);

27. Email letter from Stewart M. Spettel, DIRECTOR OF OPERATIONS, Office of Securities Operations, to Dana V. Wilcox, (REF:  ENCL 16), dated 29 March 2022, stating that the GNMA Securities "have been paid in full" and that "Ginnie Mae cannot be a party to any dispute...";

28. Affidavit by Dana V. Wilcox, dated 7 April 2022, (REF:  ENCL 1), to Legal Department / Chief Compliance Officers of Bank of New York Mellon and Ms. Alanna McCargo, Ginnie Mae President (delivered via FEDEX on 8 April 2022);

**INITIAL / DATE** ⟨signature⟩ 6/1/22

29.   Letter from Dana V. Wilcox to Bank of New York Mellon Legal Department / Chief Compliance Officers, (REF:  ENCL 17), dated 25 April 2022, requesting a formal bank letterhead notification regarding the bank's position, AS "BANK NOMINEE" and GINNIE MAE'S TRANSFER AGENT, regarding the disposition of the investment and interest payments of said GNMA CUSIP purchases / transfer of 18 December 1990, et al.;

30.   Letter, with 17 Enclosures, from Dana V. Wilcox, dated 12 May 2022, to the Office of the Inspector General, United States Department of Housing and Urban Development, Attn:  The Honorable Rae Oliver Davis, Inspector General requesting a formal investigation for conversion, theft, fraud, and violations of Fiduciary responsibilities of Ginnie Mae and its Transfer Agent The Bank of New York (Mellon), et al. (REF:  ENCL:  OIG PACKET);


I, Dana V.Wilcox hereby seek damages per the Racketeer Influenced And Corrupt Organizations Act of 1970, et al., for said activities.

---------------------------------------------


A copy of this affirmation shall have the same effect and force as an original.


I, Dana V. Wilcox, located at 517 Neely Store Road, Rockhill, South Carolina, 29730, United States Passport No. 66330350, do hereby swear and affirm that the above information is true and factual.


Dana V. Wilcox            Date

Notary: York County
        South Carolina
Denise L. Long
April 5, 2029


INITIAL / DATE

OIG ← BKT

# ENCL : OIG PKT

Affidavit by Dana V. Wilcox, dated June 16, 2022, as a précis to

this matter explaining the beginnings and process to recover funds

and income due from GNMA Securities purchased on December

18/19, 1990;

Date:  May 12, 2022

To:    Office of the Inspector General

       United States Department of

       Housing and Urban Development

       Room 8274

       451 7th Street  Southwest

       Washington, DC  20410

Attn:  The Honorable Rae Oliver Davis

       Inspector General


Ref:  ENCL 1:     Affidavit by Dana V. Wilcox, dated April 7, 2022, (delivered via
                  FEDEX   April 8, 2022)  to Legal Department / Chief Compliance
                  Officers of Bank of New York Mellon and  Ms. Alanna McCargo,
                  Ginnie Mae President;

      ENCL 2:     Minutes of the Special Meeting of The Board of Directors of THEE
                  CONSULTANCY, INC. held October 28, 1990 and Certification of
                  Authenticity;

      ENCL 3:     Contract between THEE CONSULTANCY, INC. and DIVRSIFIED
                  INDUSTRIAL TRUST, signed by Dana V. Wilcox and Owen C.
                  Meddles dated October 24, 1990 (pages 1-3);

      ENCL 4:     Irrevocable Stock or Bond Power signed by Owen C. Meddles
                  (Delmarva Timber Trust) transferring GNMAs CUSIP NO.
                  36217GF28 and 36216GUZ9 [noted in EXHIBIT "A"] to THEE
                  CONSULTANCY, INC. – DELMARVA TIMBER TRUST signed by
                  Owen C. Meddles, and dated 18 December 1990;

      ENCL 5:     Special Form of Detached Assignment for United States Registered
                  Securities  (PD 1832) Assignment of GNMAs CUSIP NO.
                  36217GF28 and 36216GUZ9 to THEE CONSULTANCY –
                  DELMARVA TIMBER TRUST signed by Owen C. Meddles, and
                  dated December 19, 1990;

      ENCL 6:     Letter from Law Offices of Neiman & Belgrad, Erwin B. Neiman,  to
                  Dana V. Wilcox, dated March 18, 1991, confirming delivery of an
                  original (a) Irrevocable Stock Bond Power bearing the signature
                  guaranteed by FIRST ANNAPOLIS SAVINGS BANK (Annapolis,
                  MD), (b) Special Form of Detached  Assignment for United States

**Initial/Date** 5/12/2L                                    1 | P a g e

Registered Securities guaranteeing the signature of Owen C. Meddles by FIRST ANNAPOLIS SAVINGS BANK (Annapolis, MD), and (c) an Original Agreement between THEE CONSULTANCY, INC. and DIVERSIFIED INDUSTRIAL TRUST;

ENCL 7:   Permanent Injunction Order against Counterclaim defendant Wesley F. Sine, Cross-Claim defendant Delmarva Timber Trust and Those Acting in concert with them....(Wesley Sine v Bank of New York, et al.,) United States Court Northern District of Ohio Western Division, 3:03cv7662, dated March 23, 2005 (pages 1-16);

ENCL 8:   Letter to Judge James G. Carr from Dana V. Wilcox, dated November 8, 2022, seeking an order to recover funds owed by Owen C. Meddles / Delmarva Timber Trust (re:  THEE CONSULTANCY, INC. – DELMARVA TIMBER TRUST GNMA ASSIGNMENT and DIVERSIFIED INDUSTRIAL TRUST AGREEMENT OF October 24, 1990) [pages 1-2];

ENCL 9:   AMENDED ORDER from Judge James G. Carr to Dana V. Wilcox, dated 6 December 2021, stating that Dana V. Wilcox was not a party to the case and is not subject to ENCL 7 ORDER;

ENCL 10:   Letter from Bank of New York Mellon, Vice President Anthony B. Mancuso to Dana V. Wilcox, dated January 21, 2022, stating that "BNYM does not hold any funds of the trust...", and that this matter is closed;

ENCL 11:   Letter from Dana V. Wilcox to Mr. Mancuso (Bank of New York) dated 23 January 2022 detailing Hearing Exhibits from Wesley F. Sine, Trustee, etc. v. The Bank of New York, et al. (8 June 2004);

ENCL 12:   Bloomberg Screen (17 February 2022) identifying GNMA CUSIP NO. 36217GF28 and GINNIE MAE Data Search Summary;

ENCL 13:   Bloomberg Screen (17 February 2022) identifying GNMA CUSIP NO. 36216GUZ9 and GINNIE MAE Data Search Summary;

ENCL 14:   Email from Jonathan Hughes, GNMA Supervisory Sr. Account Executive, Office of Issuer and Portfolio Management, on 25 February 2022, notifying Wilcox that a GNMA review is in progress by the Office of Security Operation;

ENCL 15:   Email from Ms. Chastity M. Abrom, Senior Business Analyst, Office of Securities Operations (GINNIE MAE), to Wilcox stating the results of a search for above referenced GNMA CUSIPS, et al.

**Initial/Date** _5/12/22_                          **2 | Page**

ENCL 16:    Email letter from Stewart M. Spettel, DIRECTOR OF OPERATIONS, Office of Securities  Operations, to Dana V. Wilcox, dated 29 March 2022, stating that the GNMA Securities have "have been paid in full" and that "Ginnie Mae cannot be a party to any dispute…"

ENCL 17:    Letter from Dana V. Wilcox to Bank of New York Mellon Legal Department /Chief Compliance Officers, dated April 25, 2022, requesting a formal bank letterhead notification regarding the bank's position, AS "BANK NOMINEE" and GINNIE MAE'S TRANSFER AGENT, regarding the disposition of the investment and interest payments of said GNMA CUSIP purchases / transfer of December 18, 1990, et al..


Re:         Request a formal investigation for conversion, theft, fraud, and violations of Fiduciary responsibilities of Ginnie Mae and its Transfer Agent the Bank of New York (Mellon), et al.


The Honorable Davis,

After several attempts to resolve the issue of obtaining the return of my investment in GNMA instruments of December 18, 1990, (One Hundred Eighty Seven Million U.S.D. -- $187,000,000USD), via Owen C. Meddles, including the return of the annual coupon payments from 1990 until maturity in 2016 (Ref: Encl 1:  items 1- 3) --- I appeal to you for assistance.

Due to personal medical problems, 1991 to 2004, I held the opinion that these instruments and coupon payments were in the proper accounts at The Bank of New York as GNMA's Transfer Agent.  The Ohio court case has nothing to do with these instruments and accounts since the purchase was executed years prior to the alleged activities, and Delmarva Timber Trust / Estate of Owen C. Meddles was never probated in court. Further, Judge Carr admitted that I was not a party to the case in his Amended Order of November 8, 2022 (Ref: Encl 9).

Per the Minutes of THEE CONSULTANCY, INC. (Ref: Encl 2) I was the signing authority for the company/ contract and the designated holder of the GNMA securities for the company and my family that loaned the initial funds to a Special Project --- with U.S. Presidential authority and permission (Ref: Encl 1:  items 1-6).

My attempts to resolve this matter with the Bank of New York Mellon have been met with letters from Mr. Mancuso (Vice President) stating that "BNYM does not hold any funds of the trust…", and the matter is closed (Ref: Encl 10).

Initial/Date___8/12/22___                              3 | P a g e

I also attempted to ascertain the disposition of my funds regarding the initial purchase of said securities with more than one Ginnie Mae representatives (Ref: Encl 14 and 15) --- only to receive an email note from Mr. Spettel, Director of Operations, that the GNMA Securities "have been paid in full" and that "Ginnie Mae cannot be a party to any dispute…" (Ref: Encl 16).

However, PAID IN FULL TO WHOM? Again, WHERE IS MY MONEY used to purchase said securities?  These questions have not been addressed or answered.

Therefore, my consultants and I have assembled the aforementioned enclosures and are placing them before you for an investigation to determine who was paid and where my funds are located --- and subsequently returned to me.

Further, it is our belief, based on The Securities Act of 1933, 1934 and the Code of Federal Regulations {31CFR} (Ref: Encl 1: pgs 4 and 5) --- several major violations have occurred.  Additionally, it is apparent that various acts have violated the Racketeer Influenced and Corrupt Organizations Act of 1970, et al., (RICO) (Ref: Encl 1, page 5).

Please advise what actions will be taken within five (5) business days after receipt of this request and attachments.

Thank you for your assistance in this matter.


Sincerely,


Dana V. Wilcox

804 515 0268

517 Neely Store Road

Rockhill, South Carolina  29730

**Initial/Date** 5/12/22          **4 |** P a g e

Enc 1

# ENCL 1:

Affidavit by Dana V. Wilcox, dated April 7, 2022,

(delivered via FEDEX  April 8, 2022)

to Legal Department / Chief Compliance Officers of

Bank of New York Mellon

and

Ms. Alanna McCargo, Ginnie Mae President;

I, Dana V. Wilcox, do hereby swear and affirm the following facts:

1. That the completion of the Project (which was approved by and had full U.S. Presidential authority) using the Wilcox Funds --- One Hundred Eighty Seven Million U.S.D. ($187,000,000USD) --- required the return of said Funds from an account within a Bank in Japan to Citibank in the United States;

2. That Lionel H. Bonney facilitated said funds transfer to Citibank (Trenton, NJ), and deposited in accounts of Owen C. Meddles for further delivery to Dana V. Wilcox;

3. That Owen C. Meddles then arranged and delivered the $187,000,000USD to Dana V. Wilcox in the following manner:

   a.   $151,810,503.96USD was delivered via the transfer of two (2) GNMA bonds, under the control and in the accounts of Owen C. Meddles, to THEE CONSULTANCY/WILCOX on 19 December 1990 by a signed, dated, and witnessed IRREVOCABLE STOCK or BOND SPECIAL FORM OF DETACHED ASSIGNMENT FOR UNITED STATES REGISTERED SECURITIES (FORM PD 1832) for the following Registered Securities:

   GNMA BONDS:

   | CUSIP # | PURCH VALUE | ISSUED | MATUIRTY VALUE |
   |---------|-------------|--------|----------------|
   | 36217GF28 | $ 86,860,580 | 12/01/1986 | $ 95,531,671.15 |
   | 36216GUZ9 | $ 64,948,916 | 07/01/1986 | $ 75,008,175.80 |

   b.   $35,189,496.10USD was INVESTED in a 10 Year Investment Agreement signed and dated on 24 October 1991 maturing on 24 October 2000 with a payment value of $360,000,000USD with payment to Dana V. Wilcox at completion of the Agreement;

   c.   That the aforementioned 10 Year Investment would be transacted in a Financial Institution (Bank), and would consist of the following to establish a $500,000,000USD Credit Line:

**Initial/Date** 4/24/17/22                           1 |

1.     Cusip # 36219U-UD-4 with a value of $ 41,095,655.14USD

2.     20 Year Citibank Commercial Paper valued at $500,000,000USD

3.     CASH of $35,000,000USD from Wilcox

4. That the aforementioned GNMAs were transferred and deposited in a Safe-Keeping account at Prudential-Bache Securities (Robert E. Rowe, Jr., 1 Financial Place, La Salle St., Chicago, IL) in a Trust Account for Thee Consultancy – Delmarva which required that the GNMAs be reviewed and verified as Registered U.S. Securities;

5. That the securities regulations of Pru-Bache would not allow the proposed transaction to occur within the Broker/Dealer requiring the GNMAs to be transferred back to a sub-account of Owen C. Meddles at the Banking Institution;

6. That all Wilcox holdings ($151 Million USD and $35 Million USD cash) were placed in a sub-account of Owen C. Meddles and/or his company(s) accounts to manage, invest, re-invest, and collect all interest and principal amounts;

7. That Owen C. Meddles died (1992), and the Probate Inventory List of 1994 displayed all invested GNMAs and related pledges as Delmarva documents;

8. That the Bank of New York became the Bank Nominee for the Owen C. Meddles, his companies, et al., per the court decree of Judge Carr dated 23 March 2005 regarding Wesley Sine vs Bank of New York, et al., United States District Court Northern District of Ohio Western Division, 3:03cv7662;

9. That within the Order # 10 of the Issued Decree of Judge Carr, of the aforementioned case, granted the Bank of New York, as Bank Nominee, the authority and powers to sell, liquidate, and or transfer any or all of the assets related to Owen C. Meddles / Delmarva, et al.,

10. That Wilcox submitted a certified letter of demand for payment of funds owed from the abovementioned securities and investments to the Bank of New York Chief Compliance Officer—Investor Solutions and Chief Compliance and Ethics Officer (10 December 2021), in accordance with Judge Carr's Amended Order of 6 December 2021;

11. That the Bank of New York Mellon replied, via email letter dated 21 January 2022 from Anthony B. Mancuso, Vice President, that "BNYM does not hold any funds of the trust . . .", and that this matter is closed;

**Initial/Date** W 4/7/22          2 |

12. Wilcox submitted a three (3) page letter to Mancuso (Bank of New York) dated 23 January 2022 detailing Hearing Exhibits from Wesley F. Sine, Trustee, etc. v. The Bank of New York, et al. (8 June 2004) describing:

   (a) Section 9, page 4, Number 12 --- Application for Release of Blocked Funds License Application Submitted to U.S. Department of The Treasury Office of Foreign Assets Control - dated 25 April 2001.

   (b) In The Matter of a Petition for Michael C. Cottrell, A Trustee of Delmarva Timber Trust (A Real Estate Investment Trust), A Maryland Trust and On Behalf of Cheryl D. Meddles, A Beneficiary Petitioner v. Delmarva Timber Trust, Donald A. Meddles, Trustee, Clarence C. Belton, Trustee, John E. Meddles, Trustee Defendants, ---filed with The Circuit Court of Anne Arundel County on 28 January 2004.

   (c) Page 2 of 3 Paragraph # 5.

       "The above referenced information (Ref. A) was part of a 300 document package of Due Diligence material submitted, by Michael C. Cottrell, B.A., M.S., to the Chief Executive of The United States for "Confirmation and Verification" on 27 October 2019. The OFAC documentation regarding all the banking institutions, Accounts, Funds, and Earnings were confirmed and verified by the National Intelligence Director (DNI), Central Intelligence Agency (CIA), Federal Bureau of Investigation (FBI), National Security Agency (NSA), and INTERPOL to the satisfaction of the Chief Executive Officer."

13. That Wilcox secured page 1 of 2 Bloomberg Screens (17 February 2022) for each of the abovementioned    GNMA Cusips --- indicating that the GNMA Securities had been SOLD, Matured and were PAID OFF --- Wilcox was unable to secure page 2 of 2 Bloomberg Screens for the GNMA Cusips which would show ownership and payment recipients;

14. That GNMA confirmed to Wilcox that Bank of New York is the Transfer Agent for GNMA;

15. That Wilcox contacted Jonathan Hughes, GNMA Supervisory Sr. Account Executive Office of Issuer and Portfolio Management, on 23 February 2022, to investigate Wilcox's Inquiry regarding the disposition of said GNMA securities;

16. That, on 25 February 2022, Hughes emailed a note to notifying Wilcox that a GNMA review is in progress by the Office of Security Operation;

**Initial/Date** _L W ll 7/22_                          3 |

17. That Wilcox had a telephone conversation with Hughes, (on 3 March 2022), who informed Wilcox that the GNMA securities were "still good," and will update Wilcox regarding the status of said securities and payments within a few days.

18. That Wilcox was informed by Hughes, on 11 March 2022, that two (2) groups were working on the investigation: one group investigating the ownership of the GNMA securities from issuance to the present, and the second group investigating the recipients of the GNMA coupon payments for said securities;

19. That Wilcox was informed by Hughes, on 22 March 2022, that not all of the Ownership documentation on the above referenced GNMAs are available yet, and that Stewart Spettel, Director of Operations will be in charge of this investigation.

20. That Wilcox had a phone conversation with Spettel within which Spettel noted that he was the "man to resolve the GNMA issue," and after reviewing the steps Wilcox had taken with the Bank of New York Compliance Department(s), advised Wilcox that he would have a discussion with the Bank of New York personnel on Monday, 28 March 2022;

21. That on Wednesday, 30 March 2022, Spettel during a telephone conversation that Spettel's office had no access to Bloomberg screens to trace the Ownership of the referenced GNMAs, that there was no evidence found at GNMA regarding "Meddles, Delmarva, Thee Consultancy," and since the referenced GNMAs had been PAID OFF --- the matter is closed;

22. That during the aforementioned telephone discussion, on 30 March 2022, Spettel acknowledged the depth and accuracy of Wilcox's knowledge of the banking operations relating to GNMAs and agreed to send a hard copy letter detailing the items described in paragraph # 21 within a few days.

23. That the Government National Mortgage Association (GNMA) and its TRANSFER AGENT the Bank of New York have Breached their Fiduciary Duty, and have violated the following Securities and Exchange Commission regulations, the Securities Act of 1933 and the Securities Act of 1934:


Securities Act of 1933 sections 17(a) and 17(b)

Code of Federal Regulations 31CFR Section 1010.410

Securities Act of 1933 section 5 (15 U.S.C 77e)

**Initial/Date** 4/7/22        **4 |**

Securities Act of 1934 section 203 (15 U.S.C. 80b-3)

Securities Act of 1934 section 204 (15c2-1)

Securities Act of 1934 section 204 (15c2-4)

Securities Act of 1934 section 204 15c3-3)

Securities Ac t of 1934 section 240 (13a-18)

Securities Ac t of 1934 section 240 (17a-3)

Securities Ac t of 1934 section 240 (17Ad-7)

Securities Ac t of 1934 section 240 (17f-2)

Therefore,

   I, Dana  V. Wilcox hereby seeks redress, restitution, and recovery of the aforementioned GNMA U.S. Registered Securities Face Amount, Coupon Payments from Issuance to Maturity, and Interest on said funds.

   I, Dana V.Wilcox hereby seeks redress. restitution, and  recovery of the 10 Year Investment Agreement from the investment of $35,189,496.10USD that matured on 24 October 2000 amounting to  payment of $360,000.000USD plus interest and earnings on said investment return of $360,000,000USD from 24 October 200 0 to 1 April 2022.

Further,

That the Government National Mortgage Association (GNMA) and its TRANSFER AGENT the Bank of New York have committed acts that are defined by the RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT of 1970, et al., (RICO):

   Section 1961(1)(D);

   Section 1961(1)(E);

   Section 1961(5);

   Section 1961(9);

   Section 1962(a);

**Initial/Date** _____ 4/7/22

5 |

Section 1962(b);

Section 1962(d).

I, Dana V.Wilcox hereby seek damages per the Racketeer Influenced And Corrupt
Organizations Act of 1970, et al , for said activities.

-------------------------------------------------

A copy of this affirmation shall have the same effect and force as an
original.

I, Dana V. Wilcox, located at 517 Neeley Store Road, Rockhill, South
Carolina, 29730, United States Passport No. 66330350, do hereby swear
and affirm that the above information is true and factual.

Dana V. Wilcox          Date 1/17-22

804 - 515-0268

Ann W Patrick
June 25, 2030

Initial/Date 4/7/22          6 |

# ENCL 2:

Minutes of the Special Meeting of

The Board of Directors of

THEE  CONSULTANCY, INC.

held October 28, 1990

and Certification of Authenticity;

OCT-30-90  TUE  15:34  NEIMAN'S  BELGRAD                  P.02

## MINUTES OF THE SPECIAL MEETING OF

### THE BOARD OF DIRECTORS OF

### THEE CONSULTANCY, INC.

### HELD OCTOBER 28, 1990

The Special Meeting of the Board of Directors of THEE CONSULTANCY, INC., a Delaware Corporation, was held at 5215 Old Orchard Road, Skokie, Illinois, 60077 on the 28th day of October, 1990, at the hour of 1:00 p.m., pursuant to waiver of notice by the Sole Director of the Corporation.

The Sole Director of the Corporation was present in person and telephonically in contact with the special representation of the corporation DAVID KAPLAN.

Upon motion duly made, seconded and unanimously carried, Erwin B. Neiman was chosen as Chairman of the meeting and Leslye Lehman was chosen as Secretary of the meeting.

The Chairman then resolved, passed and implemented the following:

RESOLVED that the corporation hereby appoint Dana Wilcox, Vice President of the Corporation to act as its designated representative in the closing of the Diversified Industries Trust matter.

FURTHER RESOLVED that the designated Special Representative Dana Wilcox have full authority to sign seal and deliver any and all documents on behalf of the corporation, said documents shall include but not be limited to contracts, commission agreements, disbursement statements, purchase orders, and the like, necessary to bind the corporation to the transaction wherein the corporation has entered into a contract with said Diversified Industries Trust dated October 24, 1990 wherein the corporation is to borrow from the aforesaid Diversified Industries Trust in the sum of Five Hundred Million United States Dollars pursuant to a line of credit being established by said Diversified Industries Trust.

# ENCL 4:

Irrevocable Stock or Bond Power

signed by Owen C. Meddles (Delmarva Timber Trust)

transferring GNMAs CUSIP NO. 36217GF28 and 36216GUZ9

[noted in EXHIBIT "A"] to

THEE CONSULTANCY, INC. – DELMARVA TIMBER TRUST

signed by Owen C. Meddles, and

dated 18 December 1990;

Firefox

# Irrevocable  Stock or Bond Power

FOR VALUE RECEIVED the undersigned
does (do) hereby sell, assign, and transfer unto

THE CONSULTANCY, INC.   DELMARVA TIMBER TRUST | Social Security No. 36-3422144

STOCKS shares N/A U/A                                                                                                Company

Represented by
Certificate No (s)                              U/A                                                                         inclusive

BONDS $ 151,810,503 of the DELMARVA TIMBER TRUST - (REIT) 52-0200733 Company

Represented by
Bond(s) No (s)   ATTACHED EXHIBIT "A" IS MADE A PART HEREOF                         inclusive

standing in the name of the undersigned on the books of said Company, and do hereby appoint SHEARSON/AMERICAN EXPRESS INC
attorney to transfer the foregoing on the books of said Company, with full power of substitution in the premises

Date 18 Dec '90                              Account No

SIGNATURE GUARANTEED

By

IMPORTANT — READ CAREFULLY
The signature to this Power MUST CORRESPOND with the name as written upon the face of the certificate(s) in every particular without alteration or enlargement or any change whatever and must be guaranteed by a commercial bank or a trust company having its principal office or correspondence in the city of New York or by a firm having membership in the New York or Midwest Stock Exchange

# ENCL 5:

Special Form of Detached Assignment for

United States Registered Securities  (PD 1832)

Assignment of GNMAs CUSIP NO. 36217GF28 and 36216GUZ9

to THEE CONSULTANCY -- DELMARVA TIMBER TRUST

signed by Owen C. Meddles, and dated December 19, 1990;

Firefox

abou

FORM PD 1832
Dept. of the Treasury
Bur. of the Public Debt
(Rev. Mar 1972)

OMB No 1535-0059
Exp. 1-31-80

## SPECIAL FORM OF DETACHED ASSIGNMENT FOR
## UNITED STATES REGISTERED SECURITIES

FOR VALUE RECEIVED I assign to THEE CONSULTANCY, INC. - DELMARVA TIMBER TRUST
(Name)

9215 OLD ORCHARD ROAD, SKOKIE, ILLINOIS 60077   TAX ID: 36-3422144
(Taxpayer identifying number and address of assignee)

the following-described registered securities of which I am (we are) the owner(s) or the duly authorized representative of the owner

TITLE OF LOAN and/or ISSUE _____
(Include interest rate, series, issue date and call and maturity date)

| DENOMINATION | SERIAL NUMBERS | REGISTRATION (Exact inscription on each security) |
|---|---|---|
| SEE SCHEDULE "A" ATACHED HERETO<br><br>TRU | SEE SCHEDULE "A" ATTACHED HERETO | SECURITIES LISTED ON SCHEDULE "A" ATTACHED HERETO ARE REGIS-TERED IN DELMARVA TIMBER TRUST (REIT) |

and hereby authorize discharge of registration thereof on the books of the Department of the Treasury.

PRESIDENT/CEO
OWEN MEDDLES                    _Owen Meddles Trustee_
(Signature by or on behalf of owner)

DELMARVA TIMBER TRUST (REIT)
(Additional signature, if required)

I CERTIFY that the above-named person(s) as described, whose identity (or the identity of each of whom) is well known or proved to me, personally appeared before me this _19th_ day of _December_, 19 _70_,

at _ANNAPOLIS MARYLAND_, and signed the above assignment.
(City and State)

[SEAL]

_____
(Signature and title of certifying officer)

(See other side for list of officers authorized to certify assignments)

PAGE 01

**EXHIBIT "A"**

**GNMA SECURITIES**

| CERT. NO. | POOL NO. | CUSIP NO. | AMOUNT | COUPON | MATURITY |
|-----------|----------|-----------|--------|--------|----------|
| JB-2067 | 192885 | 36217G-F2-8 | 86.860.987 | 9.0 | 12-16 |
| JB-2034 | 164500 | 36216G-GZ-9 | 64.949.916 | 9.0 | 06-16 |

DELMARVA TIMBER TRUST

JORGE E. BROWN
TRUST OFFICER

# ENCL 6:

Letter from Law Offices of Neiman & Belgrad, Erwin B. Neiman,

to Dana V. Wilcox, dated March 18, 1991,

confirming delivery of an original

(a) Irrevocable Stock Bond Power bearing the signature guaranteed by FIRST ANNAPOLIS SAVINGS BANK (Annapolis, MD),

(b) Special Form of Detached  Assignment for United States Registered Securities guaranteeing the signature of Owen C. Meddles by FIRST ANNAPOLIS SAVINGS BANK (Annapolis, MD),

and

(c) an Original Agreement between THEE CONSULTANCY, INC. and DIVERSIFIED INDUSTRIAL TRUST;

LAW OFFICES OF

# NEIMAN & BELGRAD

5215 OLD ORCHARD ROAD, SUITE 780

SKOKIE, ILLINOIS 60077

TEL. (708) 965-5215

FAX (708) 965-5890

March 18, 1991

Dana V. Wilcox
Errickson, Inc.
2630 Thurloe Drive
Richmond, Virginia 23235

Dear Dana:

Per our various conversations, enclosed please find the original of the following documents:

1. Irrevocable Stock Bond Power signed by Owen Meddles as Trustee for Delmarva Timber Trust with signature guaranteed by First Annapolis Savings Bank, Annapolis, Maryland;

2. Special Form of Detached Assignment for United States Registered Securities also signed by Mr. Meddles with his signature guaranteed by First Annapolis Savings Bank, Annapolis, Maryland along with Exhibit "A", a photocopy of the description of the various securities being assigned; and

3. Original Agreement dated October 24, 1990 between Thee Consultancy, Inc. and Diversified Industrial Trust.

The above documents constitute all the original documents which you have hereto entrusted to me. If you need any further information, require copies or listing of those parties to whom these documents have been submitted, I will be glad to supply same.

Very truly yours,

ERWIN B. NEIMAN

EBN/qs
Encls.

# ENCL 7:

Permanent Injunction Order against

Counterclaim defendant Wesley F. Sine,

Cross-Claim defendant Delmarva Timber Trust and

Those Acting in concert with them....

(Wesley Sine v Bank of New York, et al.,)

United States Court Northern District of Ohio Western Division,

3:03cv7662, dated March 23, 2005 (pages 1-16);

Case 3:03-cv-07662-JGC   Doc #: 214   Filed: 03/23/05   1 of 16   PageID #: 3741

IN THE UNITED STATES DISTRICT COURT FOR
FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

WESLEY F. SINE, TRUSTEE,                    :

    Plaintiff/Judgment Creditor          :          Case No. 3:03CV7662

    vs.                                  :          Judge James G. Carr

THE BANK OF NEW YORK, et al.,               :

    Defendants.                          :


THE BANK OF NEW YORK and                    :
POLLY & COMPANY aka
POLLY & CO.,                                :

    Defendant/                           :
    Counterclaim Plaintiffs

    vs.                                  :

WESLEY F. SINE, TRUSTEE,                    :

    Plaintiff/Judgment Creditor/         :
    Counterclaim Defendant

    and                                  :

DONALD A. MEDDLES  ,                        :

    Counterclaim Defendant.              :


## PERMANENT INJUNCTION ORDER AGAINST COUNTERCLAIM DEFENDANT WESLEY F. SINE, CROSS-CLAIM DEFENDANT DELMARVA TIMBER TRUST AND THOSE ACTING IN CONCERT WITH THEM

WHEREAS, Plaintiff/Counterclaim Defendant Wesley F. Sine ("Sine") filed a

Complaint in the Court of Common Pleas, Marion County, Ohio, against, among others,

Defendants/Counterclaim Plaintiffs The Bank of New York (the "Bank") and Polly &

Case 3:04-cv-0766-JGC   Doc # 214   Filed 03/23/05   2 of 16   PageID # 2612

Company ("Polly") and Defendants Delmarva Timber Trust ("Delmarva") and Delmarva Timber Trust d/b/a Polly & Co, seeking a declaratory judgment with regard to the ownership of certain assets and accounts;

WHEREAS, the Bank and Polly removed the action to this Court;

WHEREAS, the Bank and Polly filed a Counterclaim and Amended Counterclaim against Sine and Delmarva's Trustee and CEO Counterclaim Defendant Donald A. Meddles ("Meddles"), and a Second Amended Counterclaim against Meddles, Counterclaim Defendant Joseph Dolock ("Dolock") and Cross-Claim Defendant Delmarva, alleging that, among other things, Meddles converted funds held by the Bank and Polly and seeking a declaratory judgment with regard to the ownership of certain assets and accounts;

WHEREAS, the Court issued a temporary restraining order against Sine and Meddles on December 18, 2003, and extended that temporary restraining order by issuing an additional order on January 5, 2004;

WHEREAS, the Bank and Polly requested a preliminary injunction against Sine and Meddles and filed a Motion for an Order that Sine and Meddles Show Cause Why They Should Not be Held in Contempt of this Court's December 18, 2003 and January 5, 2004 Orders;

WHEREAS, evidentiary hearings in connection with these matters were held on February 19, 2004, February 20, 2004, and March 4, 2004 and closing arguments were held on March 25, 2004;

WHEREAS, after considering the evidence presented at those hearings and considering the authorities and arguments presented by the parties in their various memoranda in support of and/or in opposition to those motions and/or requests, on or about March 29, 2004, this Court granted the Bank and Polly's request for a preliminary injunction against Meddles and

Sine, found Sine in criminal contempt for his violations of this Court's Orders, and entered a default against Sine and struck his answer to, among other things, the Bank's Counterclaims for injunctive and declaratory relief in this action;

WHEREAS, on March 25, 2004 and May 11, 2004, this Court issued certain preliminary injunction orders directing that Sine and Delmarva refrain from various conduct and provide certain information to the Bank so as to enable the Court to ensure their compliance with its Orders;

WHEREAS, on or about May 26, 2004, the Bank filed a Motion for an Order that Delmarva and Michael C. Cottrell Show Cause Why They Should Not be Held in Contempt of this Court's May 11, 2004 Preliminary Injunction Order;

WHEREAS, on or about June 8, 2004, an evidentiary hearing was held in connection with that Motion at which Michael C. Cottrell appeared *pro se* but Delmarva failed to appear;

WHEREAS, after considering the evidence presented at that hearing and considering the authorities and arguments presented by the parties in their various memoranda in support of and/or in opposition to those motions and/or requests, on or about June 9, 2004, this Court granted the Bank and Polly's request for an Order entering a default against Delmarva and found Delmarva in contempt for its failure to comply with this Court's May 11, 2004 Order;

WHEREAS, hearings were held on January 11, 2005, and February 8, 2005, to consider a permanent injunction against Sine, Delmarva and those acting in concert with them; and

WHEREAS, after considering the evidence presented at that hearing and considering the authorities and arguments presented by the parties in their various memoranda in support of and/or in opposition to those motions and/or requests, this Court hereby grants the Bank

Case 3:03-cv-07662-JGC   Doc # 214   Filed: 03/23/05   4 of 16.   PageID #: 2614

and Polly's request for a permanent injunction against Sine, Delmarva and those acting in concert with them.

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED as follows:

This Court has jurisdiction over the subject matter of this action and over the Bank, Sine, the Delmarva Parties and Delmarva with respect to the matters addressed in this Permanent Injunction Order against Sine and Delmarva (the "Order"). Venue is also proper in this Court.

The following definitions shall apply to this Order:

   a.   "Communicate" shall mean to transfer, exchange, or transmit information in any form, whether facts, ideas, inquiries or otherwise.

   b.   "Person" shall mean a natural person.

   c.   "Institution" shall mean a corporation, entity, sole proprietorship, unincorporated entity, firm, trust, partnership, nominee, trade name, d/b/a, limited liability company, subsidiary, parent, affiliate, government body or agency of any type whatsoever, financial institution, bank, mutual fund company, investment bank, savings and loan, credit union, and/or association of any type whatsoever.

   d.   "The Bank Nominees" shall mean any Institution containing the words "Polly", "Hare", "Leslie", "Bam", "Becker", "Birney", "Book", "Bosworth", "Cez", "Clinger", "Corby", "Cox", "Dietrich", "Dimelow", "Ebny", "Finman", "Fund", "Ex", "Gorman", "Lerche", "Williams", "Charles, Frederic", "Powhatan", "Daly", "Falter", "Hagerman", "Halsey", "Hero", "Hodges", "Kay", "Lehcor", "Lyon", "Newbank", "NFB", "Nott", "O'Neill", "Palmer", "Stock", "Varley", "Hudd", "Post", "Wendel", "Whiting", "Willar", "Snack", "Shank", "Natrus", "Seaco", "Way",

"Cun", "Bul", "Pershing", "Psffex", and/or "Peny", or any derivation thereof of any
of those names or words.

      e.    "Delmarva" shall mean Delmarva Timber Trust and shall include any
and all of its actual or purported affiliates, Institutions, parents, subsidiaries,
partnerships, and/or d/b/a's, including, but not limited to, Delmarva Timber Trust
(R.E.I.T.), Delmarva Investments, Delmarva Investments, Inc., Home & Commercial
Investors, Home and Commercial Investors, Home & Commercial Investors, Inc.,
Home & Commercial Investors (R.E.I.T.) Ltd, Home & Commercial Investment Trust,
Home & Commercial Mortgage, Home & Commercial Group, Delaware Timber
Trust, Transcon Investments Trust, Transcon Investments, Maryland Timber Trust,
Polly & Co, Polly & Company, Polly & Co., Hare & Co, Hare & Company, Hare &
Co., Jacquith & Co., Jacquith & Co, Jacquith & Company, Kane & Co., Kane & Co.,
Kane & Company, Egger & Co., Egger & Co, Egger & Company, Ell & Co., Ell & Co,
Ell & Company, Claw & Co., Claw & Co, Claw & Company, Leslie & Co, Leslie & Co.,
Leslie & Company, Pace & Co, Pace & Co., Pace & Company, Russal & Co, Russal &
Co., Russal & Company, Saxon & Co., Saxon & Co, Saxon & Company, Sigler & Co,
Sigler & Co., Sigler & Company, Owen C. Meddles, G.E. Messenger, G.R. Messenger
and/or Gerald R. Messenger.  In addition, "Delmarva" shall include any and all
affiliates, d/b/a's, nominees, subsidiaries, parents, holding companies, partnerships,
trusts, real estate investment trusts, agents, employees, attorneys, investigators,
representatives, Persons or Institutions acting or purporting to act on its behalf.

      f.    "Delmarva Parties" shall mean any and all current, future and/or former
trustees, advisors, beneficiaries, employees, agents, attorneys, representatives, officers,

directors, principals, shareholders and/or investigators, including, but not limited to, John E. Meddles, Donald A. Meddles, George Brown, Jorge Brown, Clarence C. Belton, Michael C. Cottrell, Dana V. Wilcox, Charles O. Meddles, Jr., Cheryl D. Meddles-Torres, Raymond Spann, Robert Schautz and/or Robert Schatz.

     g.     "Document" shall have the same meaning as in Federal Rule of Civil Procedure 34 and shall include any kind of written, printed, typewritten, recorded, graphic, photocopied or photographic matter; and any computer input or output, however printed, produced, reproduced, coded or stored; and any kind of correspondence, whether sent to, received, or not; and includes originals, copies, photocopies, reproductions, drafts and both sides thereof; and includes, but is not limited to, papers, books, agreements, manuals, correspondence, letters, telegrams, telecopies, notes, work papers, files, writing slips, memoranda, reports, records, instructions specifications, notebooks, diaries, desk calendars, appointment books, minutes of meetings, minutes of conferences, notes of telephone conversations, balance sheets, income statements, checks, drafts, financial statements, instruments, and any document necessary or convenient to the comprehension, use or understanding of any such document.

     3.     Any failure by Sine, the Delmarva Parties and/or Delmarva to comply fully with the terms of this Order may be prosecuted as contempt of this Court.

     4.     Sine, the Delmarva Parties and/or Delmarva shall forward to counsel for the Bank any future statements, account information, communications or documents concerning securities, assets, funds, bonds, dividends, interest and/or principal payments, and/or other moneys that he/she/it or any agent on his/her/its behalf receives regarding the Bank or any

Case 3:03-cv-07662-JGC   Doc # 214   Filed: 03/23/05   7 of 16.   PageID # 2617

Institution with the word "Polly" or "Hare" in its name or title or regarding any Institution with any name of any of the Bank Nominees in its name or title within two business days of his/her/its receipt. On its receipt of such documents and/or instruments, the Bank shall within ten days either return said documents and/or instruments, or shall notify the party providing the documents and/or instruments of the Bank's intention to retain such documents and/or instruments. In the event that Sine, the Delmarva Parties and/or Delmarva contests the Bank's claim of right to such documents, he/it/they may petition this Court in writing and shall simultaneously provide the counsel for the Bank with a copy of that request. The Bank shall have ten (10) business days after its receipt of that request to submit to the Court its objection, if any, to that request. Instruments received by Sine, the Delmarva Parties, Delmarva and/or any agent on his/her/its behalf, that represent the payment of funds that had been escheated to any state or commonwealth in connection with the Bank or any Institution with the word "Polly" or "Hare" in its name or title or in connection with any Institution with any name of any of the Bank Nominees in its name or title shall be deposited with the Clerk for this Court and disposed of pursuant to further Court order.

5.     Sine, the Delmarva Parties, Delmarva and all Persons or Institutions in active concert or participation with them, including any and all of their agents, attorneys, investigators, advisors, trustees, successors and assigns and estates, are HEREBY permanently RESTRAINED and ENJOINED from directly or indirectly:

a.     Communicating with or contacting any Person or Institution in any way whatsoever regarding any asset owned, held by, or registered in the name of: (1) the Bank; (2) any Institution with the word "Polly" or "Hare" in its name or title; and/or (3) any Institution with the name of any Bank Nominee in its name or title;

Case 1:07-cv-03582-JGC   Doc #: 214   Filed: 03/23/05   8 of 16   PageID #: 2619

b.    Communicating with or contacting any Person or Institution in any way whatsoever regarding the following EINs: 13-6582163, 13-6062916 and 13-3854907, or any of the EINs of any of the Bank Nominees. Nothing in this subparagraph shall prohibit any of the parties to this Order from communicating with the Internal Revenue Service and/or its Taxpayer Advocate Service;

c.    Representing or stating in any way whatsoever that Sine, Alpha Funding Group Trust, Alpha Funding Group, Inc., Meddles, Dolock, any of the Delmarva Parties and/or Delmarva have any interest or claim in any way whatsoever to any entity or Institution with the word "Polly" or "Hare" in its name or title or the names of any of the other Bank Nominees in its name or title or to the following EINs: 13-6582163, 13-6062916 and 13-3854907, or any of the EINs of any of the Bank Nominees;

d.    Representing or stating in any way whatsoever that Sine, Alpha Funding Group Trust, Alpha Funding Group, Inc., Meddles, Dolock, any of the Delmarva Parties and/or Delmarva have any interest or claim to any asset owned, held by, or registered in the name of: (1) the Bank; (2) any Institution with the word "Polly" or "Hare" in its name or title; or (3) any Institution with the name of any Bank Nominee in its name or title, or to the following EINs: 13-6582163, 13-6062916 and 13-3854907, or any of the EINs of any of the Bank Nominees;

e.    Filing any action or claim, including but not limited to, filing any claim or request for any abandoned or escheated funds, with any Institution for any asset owned, held by, or registered in the name of: (1) the Bank; (2) any Institution with the word "Polly" or "Hare" in its name or title; and/or (3) any Institution with the name of any Bank Nominee in its name or title. Sine, Delmarva and the Delmarva Parties shall

immediately withdraw any and all requests or claims for any escheated funds of or held in the name of the Bank, any Institution with the word "Polly" or "Hare" in its name or title, or any Institution with the name of any Bank Nominee in its name or title;

f.      Communicating in any way with, or performing any further work, consulting or investigation with (1) Donald A. Meddles; (2) John Meddles; (3) Clarence C. Belton; (4) Michael C. Cottrell; (5) Dana V. Wilcox; (6) Charles O. Meddles, Jr.; (7) Cheryl D. Meddles-Torres; (8) Jorge/George Brown; and (9) Raymond Spann, including, but not limited to, any Person, Institution, agent, attorney, investigator or representative acting on their behalf, concerning Polly, Hare & Company aka Hare & Co. ("Hare"), and/or any of the Bank Nominees;

g.      Hiring, communicating with and/or using in any way any Person or Institution to investigate, gather and/or locate any purported assets, property or funds of any kind of the Bank or any Institution with the word "Polly" or "Hare" in its name or title or of any Institution with any name of any of the Bank Nominees in its name or title.  In particular, Robert Schatz or any other investigator retained by Delmarva, the Delmarva Parties or Sine, including, but not limited to, any and all Persons and/or Institutions acting or purporting to act on his/her/its behalf, shall immediately cease and desist from any further efforts in any manner relating to any investigation of the Bank, any Institution with the word "Polly" or "Hare" in its name or title, any Institution with any name of any of the Bank Nominees in its name or title, and/or any of its/their assets; and

h.      Pursuing, seeking, requesting the transfer of, transferring, converting, undertaking any change of any kind whatsoever in the possession or status of,

redeeming, holding or in any way communicating about any property, instrument funds, dividend, interest payment, moneys, security, bond, stock or other asset of or held in the name of the Bank, any Institution with the word "Polly" or "Hare" in its name or title or any Institution with the name of any Bank Nominee in its name or title, including, but not limited to any asset, money, property, fund, security, stock, instrument or bond held or associated in any way with U.S. Trust, U.S. Bank and/or Wells Fargo that is being held by, registered in the name of and/or owned by an Institution with the word "Polly" in its name.

Nothing in this Paragraph or this Order shall preclude Sine's counsel of record in this case from communicating with any Person respecting this action, the action styled *United States of America v. Darra N. Panthaky & Wesley F. Sine*, C.R.S. 02-0079 FCD, United States District Court for the Eastern District of California, or otherwise discharging his or her duties as a lawyer. In addition, nothing in this Paragraph or this Order shall preclude Sine from truthfully testifying at any hearing or trial.

If Sine, Delmarva and/or the Delmarva Parties wish to seek relief from this Paragraph 5 and wish to engage in any of the activities described in this Paragraph 5, he/they shall first make a written request to the Bank's counsel to do so. If the Bank and Sine/the Delmarva Parties/Delmarva cannot reach a written agreement over any such request within ten business day of the receipt of that request by the Bank's counsel, Sine/the Delmarva Parties/Delmarva may file a motion with this Court for leave to engage in the requested activity or activities. The Bank shall have ten (10) business days after its receipt of that request to submit to the Court its objection, if any, to that request. Sine, the Delmarva Parties and Delmarva shall not engage in any of the activities described in Paragraph 5 unless the Court issues an order granting such

motion for leave.

6.      Except as provided in this Paragraph 6, and with the exception of this Action, Sine, Delmarva and the Delmarva Parties, their agents and/or anyone acting on their behalf or in their interest shall not, directly or indirectly, file, commence, initiate, prosecute, pursue, join or submit any lawsuit, legal proceeding, arbitration, garnishment, collection action, levy, action or claim against the Bank, Delmarva, the Delmarva Parties, Meddles, Dolock, any Institution with the word "Polly" or "Hare" in its name or title or any Institution with the name of any of the Bank Nominees in its name or title in connection with any lawsuit, legal proceeding, arbitration, garnishment, collection action, levy, action or claim involving an attempt to obtain or execute on a judgment of any type whatsoever (hereinafter "Claim") against the Bank, any Institution with the word "Polly" or "Hare" in its name or title, or any Institution with any of the names of any of the Bank Nominees in its name or title.  In the event that Sine, Delmarva or the Delmarva Parties wish to pursue a Claim against the Bank, any Institution with the word "Polly" or "Hare" in its name or title, or any Institution with any of the name of any of the Bank Nominees in its name or title, Sine, Delmarva or the Delmarva Parties shall submit such request to this Court in writing and shall simultaneously provide the counsel for the Bank with a copy of that request.  The Bank shall have ten (10) business days after its receipt of that request to submit to the Court its objection, if any, to that request.

7.      Sine, Delmarva and the Delmarva Parties shall not issue subpoenas or make any requests for information to any Person or Institution seeking or requesting documents or information as to the Bank, Polly, Hare, the Bank Nominees, any Person or Institution with the words "Polly" or "Hare" in its name or title, or any Person or Institution with the names of any of the Bank Nominees in its name or title.  Sine, Delmarva and the Delmarva Parties shall

Case 1:01-cv-00562-JFA   Doc #: 214   Filed: 03/23/05   12 of 16.   PageID #: 2692

withdraw any and all pending requests or subpoenas in this or any other action or lawsuit concerning any requests for information to any Person or Institution seeking or requesting documents or information as to the Bank, Polly, Hare, the Bank Nominees, any Person or Institution with the words "Polly" or "Hare" in its name or title, or any Person or Institution with the names of any of the Bank Nominees in its name or title, including, but not limited to, any subpoenas to any Person or Institution seeking or requesting documents or information as to the Bank, Polly, Hare, the Bank Nominees, any Person or Institution with the words "Polly" or "Hare" in its name or title, or any Person or Institution with the names of any of the Bank Nominees in its name or title, including, but not limited to, any such subpoenas or requests issued or served in any way whatsoever in the action styled Commercial Lending Group, Inc. v. Alpha Funding Group, Inc., et al., which action is pending in the Third Judicial District Court for Salt Lake County, State of Utah, as Civil No. 020912306, as well as in the action styled Wesley F. Sine, et al. against Delmarva Timber Trust, et al., which action is pending in the U.S. District Court for the District of Utah, Central Division, as Civil No.: 2:01CV1046S.

In the event that Sine, Delmarva or the Delmarva Parties wish to issue subpoenas or make any requests for information to any Person or Institution seeking or requesting documents or information as to the Bank, Polly, Hare, the Bank Nominees, any Person or Institution with the words "Polly" or "Hare" in its name or title, or any Person or Institution with the names of any of the Bank Nominees in its name or title, Sine, Delmarva or the Delmarva Parties shall submit such request to this Court in writing and shall simultaneously provide the counsel for the Bank with a copy of that request.  The Bank shall have ten (10) business days after its receipt of that request to submit to the Court its objection, if any, to that request.

## CERTIFICATION OF AUTHENTICITY

I, Leslye Lehman, the Assistant Secretary of the THEE CONSULTANCY, INC. do hereby certify that the above and foregoing Waiver of Notice of the Special Meeting of Board of Directors of THEE CONSULTANCY, INC., held on the 28th day of October, 1990, and the Minutes of the said Special Meeting of the Board of Directors of THEE CONSULTANCY, INC. are true and correct copies of the Minutes lodged in the Corporate Minute Book of said Corporation and that each and every provision thereof is in full force and effect.

LESLYE LEHMAN, ASST. SECRETARY

(STATE OF ILLINOIS)
(COUNTY OF COOK )

I, the undersigned, a Notary Public, in and for the County and State aforesaid, DO HEREBY CERTIFY, that Leslye Lehman, Asst. Secretary of the THEE CONSULTANCY, INC., personally known to me to be the Assistant Secretary of said Corporation, and personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that as such Assistant Secretary, she signed and delivered the said instrument as Assistant Secretary of said Corporation, and caused the corporate seal of said Corporation to be affixed thereto, pursuant to authority, given by the Board of Directors of said Corporation as their free and voluntary act.

Given under my hand and official seal this 28th day of October, 1990.

NOTARY PUBLIC

" OFFICIAL SEAL "
GLORIA A. GLASSMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/17/92



## WAIVER OF NOTICE OF SPECIAL MEETING

## OF BOARD OF DIRECTORS OF THEE CONSULTANCY, INC.

### HELD OCTOBER 28, 1990

I, the undersigned, being the Sole Director of THEE CONSULTANCY, INC. a Delaware corporation, do hereby waive all notice of the special meeting of said Board of Directors, whether provided by stature or otherwise, and consent and agree that such special meeting of the Board of Directors shall be held at 5215 Old Orchard Road, Skokie, Illinois, 60077 on the 28th day of October, 1990.

Dated this 28th day of October, 1990.

ERWIN B. NEIMAN, Sole Director

# ENCL 3:

Contract between

THEE CONSULTANCY, INC.

and

DIVERSIFIED INDUSTRIAL TRUST,

signed by

Dana V. Wilcox and Owen C. Meddles

dated October 24, 1990 (pages 1-3);

Firefox                                                                                    abou

# THEE CONSULTANCY, INC.

ERWIN B. NEIMAN, ESQ., TRUSTEE
5215 OLD ORCHARD ROAD, SUITE 799
SKOKIE, ILLINOIS, 60077
FAX. (708) 965-5699
(708) 965-5715

REGIONAL OFFICE:
C/O D. KAPLAN
1557 RUNNYMEADE
ATLANTA, GEORGIA 30319
(404) 457-1361
FAX, ON REQUEST

## A G R E E M E N T

THIS AGREEMENT entered into this 24th day of October, 1990, in the City of Skokie, Illinois 60077, by and between THEE CONSULTANCY, INC., c/o Erwin B. Neiman, Trustee, 5215 Old Orchard Road, Skokie, Illinois 60077, a Delaware Corporation (hereinafter referred to as the borrower), and DIVERSIFIED INDUSTRIAL TRUST, 8122 Foxwell Road, Millersville, Maryland (herein referred to as the lender).

WHEREAS, the BORROWER has a proprietary investment program and desires to borrow funds to implement same; and

WHEREAS, the LENDER has funds available to lend and is authorized by it to make such loan; and

WHEREAS, the LENDER has examined and become fully informed with the investment program of BORROWER and is willing to lend money and/or securities to BORROWER.

THEREFORE, IT IS HEREBY MUTUALLY AGREED BY AND BETWEEN THE PARTIES AS FOLLOWS:

A.    That LENDER shall establish a Trust Account with The Bank Of Montreal (hereinafter referred to as BANK).

B.    That BORROWER shall establish a separate trust account with BANK, the signature authority over same shall remain exclusively with and under the authority of the BORROWER in keeping with the terms and conditions of this Agreement.

C.    That simultaneously with the establishment of the LENDERS trust account the LENDER shall deposit sufficient securities in said account as to cause BANK to extend a line of credit to the trust account established by the BORROWER IN THE AMOUNT OF USD *500 MILLION (500,000,000)* and so order BANK to extend said line of credit to the trust account of the BORROWER.

D.   That the BORROWER shall have the unrestricted right to draw against the credit established by LENDER for the trust account of BORROWER for the purpose of buying and selling of the following financial instruments without restriction as to diversification or mix of securities contained in said portfolio:

a. Prime Bank Interest Bearing Notes bearing various interest rates and varying in term from five to twenty years;

b. Prime bank non-interest bearing Letters Of Credit, both documentary and standby, varying in term from one to five years;

c. Certificates Of Deposit, both interest and non-interest bearing, varying in term from one month to five years;

d. Other forms of prime bank guarantees and obligations that are normally issued by said institutions.

E.   That the BORROWER shall establish a letter of credit for a period of ten years from the date the LENDER establishes the line of credit for the use of the BORROWER.   Further:

a. Said letter of credit shall be from a bank acceptable to the LENDER and made "payable to bearer" or his assigns;

b. Said letter of credit shall be tendered to LENDER's trust account and held in the LENDERS trust account for the term of this Agreement;

c. Said letter of credit shall be in an amount sufficient to pay the LENDER on the obligatory date an amount equal to the line of credit established by the LENDER for the use of the BORROWER (see paragraph "C":);

d. On said obligatory date the BANK shall release the original instruments used to establish the credit line for the BORROWER to the LENDER.   Simultaneously with the release of said instruments from BANK to LENDER the BANK shall tender title and possession of the letter of credit to the BORROWER.

F.   That in consideration of the LENDER depositing it's securities in the LENDER's trust account and establishing a line of credit for the use of the BORROWER, BORROWER shall pay 36% simple interest annually in arrears computed on the basis of the credit line established for the use of the BORROWER (see paragraph "C") by the LENDER.   The BORROWER shall establish a letter of credit in favor of the LENDER to secure the interest factor as stated herein.   However, the BORROWER shall have the option of not establishing a letter of credit as set fourth in this paragraph and paying 3% monthly in arrears in lieu of the annual 36% simple interest.

G. That in the event the BORROWER fails to make any interest payments as called for in this Agreement, either monthly in arrears or by the establishment of a letter of credit, the LENDER can, upon 3 banking days prior written notification, by certified mail or receipted hand delivery to BORROWER   at the address stated herein, after receipt thereof, terminate this Agreement and assume signature authority with discretionary power over the BORROWER's trust account in the BANK.   Upon satisfaction of

the LENDER's POSITION and after the payment of all bank charges and fees all surplus funds shall be deemed the property of the BORROWER.

I.     That the parties individually signing on behalf of the respective companies hereby warrant and represent to one another that have full corporate and/or trust authority to sign this Agreement and to bind their respective organizations to the terms of this Agreement and that this agreement is hereby entered into with full knowledge and consent of all necessary Board Of Director and/or Trustees.

J.     The terms of the Agreement and the loan contemplated hereunder shall be for ten years.  Said term shall commence on the date the credit line is made available to the BORROWER by the BANK  as established by this agreement.

K.     Venue for this Agreement shall be the State Of Illinois and Cook County.  This Agreement shall be interpreted in accordance with the laws of the State of Illinois, regardless where any action shall be brought.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals at the date and place first aforementioned

THEE CONSULTANCY, INC.
A Delaware Corporation

By: _____     _____     10/24/90
Dana V. Wilcox, Jr., Vice-president     WITNESS     DATE


DIVERSIFIED INDUSTRIAL TRUST,
A Maryland Trust

By: _____     _____     _____
Owen C. Maddies, Asst. Actuary     WITNESS     DATE

Case 2:03-cv-07662-JGC   Doc # 214   Filed: 03/23/05   13 of 16.   PageID #: 2632

8.      Sine, Delmarva and the Delmarva Parties shall immediately dismiss the Bank, Polly, Hare and/or any other Institution with the name of any of the Bank Nominees in any and all lawsuits, claims, cases, legal proceedings, arbitrations, collection actions, garnishments, levies and/or actions, including, but not limited to, the action styled <u>Commercial Lending Group, Inc. v. Alpha Funding Group, Inc., et al.</u>, pending in the Third Judicial District Court for Salt Lake County, State of Utah, as Civil No. 020912306, and the action styled <u>Wesley E. Sine, et al. against Delmarva Timber Trust, et al.</u>, pending in the U.S. District Court for the District of Utah, Central Division, as Civil No.: 2:01CV1046S.  Within twenty business days of the Entry of this Order, Sine, Delmarva and/or the Delmarva Parties shall release all judgments against the Bank, Polly, Hare and/or any other Institution with the name of any of the Bank Nominees, including but not limited to the action styled <u>Commercial Lending Group, Inc. v. Alpha Funding Group, et al.</u>, pending in the County of Ramsey, Second Judicial District, State of Minnesota, Case No. C2-03-010379, and the action styled <u>Wesley E. Sine v. The Bank of New York, et al.</u>, Marion County Common Pleas Court, Case No. 03 CV 0666, Judge Robert S. Davidson.  Within twenty business days of the Entry of this Order, Sine, Delmarva and/or the Delmarva Parties shall provide this Court and counsel for the Bank with copies of certified documents demonstrating his/her/its dismissal, release, and/or termination in all such actions.

9.      Subject to the provisions in Paragraphs 5, 6, 7, and 8 of this Order, Sine, and/or the Delmarva Parties may pursue Claims or actions against Delmarva.  To address any confusion arising out of the definition of Delmarva in subparagraph 2(c), Sine, Delmarva and/or the Delmarva Parties shall not pursue any assets of actual or purported affiliates, Institutions, parents, subsidiaries, partnerships, and/or d/b/a's of Delmarva in the name of

Polly & Co, Polly & Company, Polly & Co., Hare & Co, Hare & Company, Hare & Co., Leslie & Co, Leslie & Co., and/or Leslie & Company, or any derivation thereof, or in the name of any Institution with the name or title of any of the Bank Nominees in its name or title.

10.     Nothing in this Order shall interfere in any way with the right or ability of the Bank, Polly, Hare and/or the Bank Nominees to take any action of any type whatsoever with respect to any asset registered in the name of the Bank, Polly, Hare and/or the Bank Nominees, including, but not limited to, re-registering any asset under a different nominee's name, notifying and/or confirming with Institutions the proper address and/or account information for assets registered in the name of the Bank, Polly, Hare and/or the Bank Nominees, and/or selling or transferring any asset held in the name of the Bank, Polly, Hare and/or the Bank Nominees. The Bank, Polly, Hare and/or the Bank Nominees are not obliged to report to the Court or the other Parties any actions they undertake as to any of the assets registered in their names.

11.     The Clerk is DIRECTED to serve copies of this Order upon the following:

Wesley F. Sine
420 East Temple Street, Suite 355
Salt Lake City, Utah 84110

Ronald Barker, Esq.
2870 South State Street
Salt Lake City, Utah 84115
Attorney for Plaintiff/Counterclaim-Defendant Wesley F. Sine

Joseph Dolock
38 East Quail Run
Charlestown, Rhode Island 02813

Donald A. Meddles
1607 Marion Edison Road
Marion, Ohio 43302

Case 3:03-cv-07065-JGC   Doc #: 214   Filed: 03/23/05   15 of 16.   PageID #: 262

Clarence C. Belton
807 Dulin Clark Road
Centreville, Maryland 21617

John E. Meddles
1607 Marion Edison Road
Marion, Ohio 43302

John F. Marsh, Esq.
Porter, Wright, Morris & Arthur, LLP
41 S. High Street
Columbus, Ohio 43215
Attorney for Defendant Bank of New York and
Polly & Company a.k.a. Polly & Co.

Michael C. Cottrell
1157 W. 7th Street
Erie, Pennsylvania 16502-1105

Richard Kerger, Esq.
Kerger & Kerger
33 South Michigan Street, Suite 201
Toledo, Ohio 43602
Attorney for Joseph Dolock

Dana V. Wilcox
1319 Nottaway Avenue
Richmond, Virginia 23227

Charles O. Meddles, Jr.
8122 Foxwell Road
Millersville, Maryland 21108

Cheryl D. Meddles-Torres
2241 Arthur Street
Merrick, NY 11566

Robert Schatz
15795 Pawn Place
Monteclair, Virginia 20026

Christopher Stappas
c/o Spartan Financial Group, LLC

Case 1:03-cv-07662-JGC   Doc #: 244   Filed: 03/23/05   16 of 16.   PageID #: 2678

4 Campus Drive
Parsippany, New Jersey 07054

Cary Rodman Cooper, Esq.
Cooper & Walinski
900 Adams Street
Toledo, Ohio  43624
Attorney for Plaintiff/Counterclaim-Defendant Wesley E. Sine

Raymond Spann
126 Scott Street
Baltimore, Maryland  21201

Raymond Spann
c/o GBG Associates
747 North Grantley Street
Baltimore, Maryland  21229-2032

12.    Any modification of this Order must be in writing and must be approved by this Court.  Nothing in this Paragraph shall preclude Sine, Delmarva, the Delmarva Parties or the Bank from seeking any future modification of this Order.

13.    This Court shall retain jurisdiction of this action after the entry of this Order to enforce compliance with its terms and to take any action necessary or appropriate for its interpretation, modification, or enforcement.

SO ORDERED.

S/James G. Carr
Chief Judge

ENCL 8:

Letter to Judge James G. Carr from Dana V. Wilcox,

dated November 8, 2022,

seeking an order to recover funds owed by

Owen C. Meddles / Delmarva Timber Trust

(re:  THEE CONSULTANCY, INC. – DELMARVA TIMBER TRUST

GNMA ASSIGNMENT and

DIVERSIFIED INDUSTRIAL TRUST AGREEMENT of

October 24, 1990) [pages 1-2];

abo

Dana V. Wilcox

8046 Clems Branch Road

Indian Land, South Carolina, 29707

November 8, 2021


Ref: CASE# 3:03 CV7662

Judge James G. Carr


Judge James G. Carr
James M. Ashley & Thomas W.L. Ashley
1716 Spielbusch Ave.
Room 307
Toledo, Ohio 43604-1363

John F. Marsh Esquire
Porter, Wright, Morris & Arthur
41 S. High Street
Columbus, Ohio 43215
Attorney for Defendant Bank of New York
And Polly & Company and Polly & Co.

Gentlemen,

I am writing you seeking an order for monies owed to me by Owen C. Meddles, Delmarva Timber Trust and related companies for contracts, agreements and representations by Owen C. Meddles and other Trust Officers.

I am now aware Judge Carr's order filed 3-23-2005 and my restrictions discussed in this order. Mr. Meddles, I and others were active in special projects in the 70s, 80s and early 90s. During that time Demarva, related companies and entities were in no way part of the Bank of New York. There were bank accounts in the Bank of

Firefox                                                                                                                        abou

New York as well as others. Since that time, the Bank is now the Bank Nominee of these trusts, companies and entities by this court's order.

I was not served in this court case or received this court's final order. I did give a deposition to Mr. Marsh by telephone, which was never forwarded to me to read and approve. I heard nothing after this telephone deposition. I did restrict my deposition to only times and things involving Donald Meddles and Michael Cottrell's involvement in the trust from 2001 onward and not my past involvement with the trust.

As a result of this court findings and it order all assets of Owen C. Meddles, his companies and entities are now Nominees of the Bank of New York. So too are the liabilities. I ask this court and the Bank of New York to realize these liabilities and pay promptly.

In an effort to acquaint you with this request and secure the prompt payment to me, please  see copies of various documents for your review. I look forward to your response to this request within 15 business days.

Sincerely

Dana V. Wilcox
804 515 0268

# ENCL 9:

AMENDED ORDER from Judge James G. Carr to Dana V. Wilcox, dated 6 December 2021, stating that Dana V. Wilcox was not a party to the case and is not subject to ENCL 7 ORDER;

Case: 3:03-cv-07662-JGC  Doc #: 288  Filed: 12/06/21  1 of 1.  PageID #: 3019

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Wesley Sine

          Plaintiff.

       vs.

The Bank of New York, et al

       Defendant.

CASE NO. 3:03cv7662

AMENDED ORDER

    Pending in this case, which has been closed since 2008, is a pro se "notice for monies owed," filed by Dana V. Wilcox who is a non-party to this case. Because this case is closed, it cannot provide a source of funds or other relief to anybody, including not just the parties, but to anyone who never was and presently cannot become a party. It is therefore ordered that the (Doc. 287) "notice of monies owed" be and the same hereby is denied and deemed stricken from the record of this closed case.

    SO ORDERED

                      s/James G. Carr
                      Sr. U.S. District Judge

# ENCL 10:

Letter from Bank of New York Mellon,

Vice President Anthony B. Mancuso to Dana V. Wilcox,

dated January 21, 2022,

stating that "BNYM does not hold any funds of the trust...",

and that this matter is closed;

The Bank of New York Mellon
240 Greenwich Street
Legal Department -- 18th Floor
New York, New York  10286

(212) 635-1134

January 21, 2022

**Via E-Mail**

Mr. Dana V. Wilcox
8046 Clems Branch Road
Indian, South Carolina  29707

Re:  **Wesley Sine v. The Bank of New York, et al.**
Case:   # 3:03cv7662

Dear Mr. Wilcox:

The Bank of New York Mellon ("BNYM") is in receipt of your letters dated December 10, 2021 in connection with the above matter.

In your letters you claim to be seeking money allegedly owed to you by Owen C. Meddles, Delmarva Timber Trust and related companies for contracts, agreements, and representation by Mr. Meddles and other Trust Officers.

According to the Amended Order, which was filed by the Court on December 6, 2021, the above case has been closed since 2008 and the "notice of monies owed" you filed was denied and deemed stricken from the Court's record.

As reported in Public Court Filings, The Bank of New York was the victim of a scheme which involved, Wesley F. Sine, and Donald F. Meddles, an officer of the Delmarva Timber Trust.  BNYM does not hold any funds of the trust or anyone else that could be applied to other claimants.

Accordingly, BNYM cannot provide you with any assistance on this closed matter.

Very truly yours,
*Anthony R. Mancuso*
Anthony R. Mancuso
Vice President

ENCL 11:

Letter from Dana V. Wilcox to Mr. Mancuso (Bank of New York)

dated 23 January 2022

detailing Hearing Exhibits from

Wesley F. Sine, Trustee, etc. v. The Bank of New York, et al.

(8 June 2004);

To: Anthony R. Mancuso

Vice President

The Bank of New York Mellon

240 Greenwich Street

Legal Department – 18th Floor

New York, New York 10286

Via:   Certified U.S. Mail

Email: mancuso@bnymellon.com


Ref: Wesley F. Sine, Trustee, etc. v. The Bank of NewYork, et al.

Case No. 3:03CV7662

June 8, 2004, HEARING EXHIBITS

(A) Section 9, page 4, Number 12
Application for Release of Blocked Funds
License Application Submitted to
U.S. Department of The Treasury
Office of Foreign Assets Control
dated 25 April 2001;

(B) In the Matter of a Petition for Michael C. Cottrell,
A Trustee of Delmarva Timber Trust (A Real Estate Investment Trust),
A Maryland Trust and On Behalf of Cheryl D. Meddles, a Beneficiary
Petitioner
v.
Delmarva Timber Trust, Donald A. Meddles, Trustee, Clarence C. Belton,
Trustee, John E. Meddles, Trustee Defendants, filed with The Circuit Court
of Anne Arundel County on 28 January 2004;

( C) Case No. 3:03CV7662-JGC  Doc#: 214 Filed:  03/23/05 1 to16;


Re: Your letter dated January 21, 2022

Dear Mr. Mancuso,

In response to your letter dated January 21, 2022, please note the following
items:

(1) Judge Carr turned back my request for Motion for Funds because he no longer had control of the above referenced case, and the funds in question due to the fact that the case is closed. By so doing, he gave me permission to make a request for funds from The Bank of New York, since I was not a party to the aforementioned case.

(2) The Court found the Bank of New York to be Bank Nominee of various institutions per page 2614 (Ref. C), i.e., Polly Corporation and Delmarva, et al., per page 2615 (Ref. C), and for Owen C. Meddles, G.E., G.R., and Gerald R Messenger. In so doing, The Bank of New York could also be able to collect from accounts and other information from various banking institutions.

(3) It is significant to note that the Probate Petition (Ref. B) was compiled and filed prior to Mr. Sine and Mr. Donald Meddler's ruse activities.

(4) This was presented to the Court as required by Judge Carr. One Volume, 5 to 6 inches thick, describing property, bank accounts, securities, and/or other assets ---indicating a value of One Trilion United States Dollars or more. Many of these assets had lapsed and were either carried by Owen C. Meddles and/or the Messenger(s).

(5) The above referenced information (Ref. A) was part of a 300 document package of Due Diligence material submitted, by Michael C. Cottrell, B.A., M.S., to the Chief Executive of The United States for "Confirmation and Verification" on 27 October 2019. The OFAC documentation regarding all the banking institutions, Accounts, Funds, and Earnings were confirmed and verified by the National Intelligence Director (DNI), Central Intelligence Agency (CIA), Federal Bureau of Investigation (FBI), National Security Agency (NSA), and INTERPOL to the satisfaction of the Chief Executive Officer.

(6) None of the funds requested were involved with Donald Meddles' activities. Said funds were sanctioned by President Reagan. Said funds were provided to accomplish "Special Projects" via securities and other financial transactions --- NOT FOR DELMARVA. When the "Projects" were completed in 1989 --- the funds were held in a banking institution located in Japan. The funds were then sent to Delmarva and/or Owen C. Meddles account(s) in the United States --- for disposition.

The One hundred and Fifty million United States Dollars ($150,000,000USD) of GNMAs were then placed in a nine percent (9%) debenture. Said debenture was purchased by Owen Meddles and an assignment was made to The Consultancy/Dana V. Wilcox.

Thirty Million plus United States Dollars ($30,000,000USD) was placed in another ten (10) year transaction at a different banking institution in a Forfeiting banking operation. ALL FUNDS were and are due to the Wilcox Family.

Given the above description of the nature and verification of said funds, this should be sufficient to resolve the matter forthwith.

Sincerely,

Dana V. Wilcox
804 515 0268
DVWILCOX@gmail.com
Social Security Number at request
USA Passport - #66330350
South Caroline DL-104441866

CC:    Julia Braithwaite
       Chief Compliance Officer-BYN Mellon-Investor solutions

       Jacqueline Joyston-Bachal
       Chief Compliance and Ethics Officer

ENCL 12:

Bloomberg Screen (17 February 2022)

identifying GNMA CUSIP NO. 36217GF28

and GINNIE MAE Data Search Summary;

| GN 192885 | Paid Off | | --/-- | | Yield --/-- | | | Coupon 9.000% | | -- |
|---|---|---|---|---|---|---|---|---|---|---|
| As of -- | Prepay -- | | Ginnie Mae I Pool | | | | | | | |

GN 192885 Mtge

Page 1/2 Security Description

**100% GNSF 9 S**       9.500(0)360 CUSIP 36217GF28   Pool Level ▾   99 Buy   90 Sell

Summary   Covenants

| Pool | GN 192885 | | | | 16) Seasoning | GNSF 9 S | | As Of | | 11/2016 |
|---|---|---|---|---|---|---|---|---|---|---|
| Type | (SF) 15/30 years Level pay | | | | 17) Vintage | GNSF 9 1986 | | Issue Date | | 12/01/1986 |
| Traits | 30/360 | | | | | | | Maturity Date | | 12/15/2016 |
| 11) Seller | MIDFIRST BANK | | Issuer | GNMA | | | | | | |

| 12) Pool Information \| PDI | | | | | | | | **Balance** | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Coupon | 9.000 | WAC✶ | | 9.500 | Orig WAC✶ | | 9.500 | Factor | | Paid Off |
| | | WARM✶ | | 0 | Orig WAM✶ | | 360 | Orig Amt | | 95,531,671 |
| | | WALA✶ | | 360 | | | | Curr Amt | | |

| 13) Collateral Information \| CLC | | | | | | | | Prepay | CPR | PSA |
|---|---|---|---|---|---|---|---|---|---|---|
| WAOLTV✶ | 83 | AOLS | | 60,665 | | | | 1 Month | 0.0 | 0 |
| WAOLTV-HPI✶ | 34 | WAOLS | | 61,525 | | | | 3 Month | 64.5 | 1075 |
| | | | | | Green Bond | | N | 6 Month | 82.1 | 1368 |
| | | WAOLT✶ | | 360 | | | | 1 Year | 59.6 | 994 |
| | | | | | | | | Life | 18.4 | 320 |
| 14) # Loans | 0 | Delay | 44 ( 14 ) | | | | | 18) States | | %UPB |
| | | | | | | | | North Carolina | | 46.6 |
| | | | | | | | | Alabama | | 29.7 |
| 15) Paydown Information \| PDI PERF | | | | | ✶Value calculated by Bloomberg | | | Maryland | | 23.7 |

| Prepay History | Nov16 | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec15 ▲ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Month CPR | 0.0 | -1.3 | 95.6 | 99.9 | 43.6 | 8.6 | 5.8 | 4.4 | 3.4 | 2.7 | 28.5 | 5.9 |
| 3 Month CPR | 64.5 | 96.0 | 96.7 | 91.0 | 21.4 | 6.3 | 4.6 | 3.5 | 12.4 | 13.2 | 13.8 | 5.0 |
| 6 Month CPR | 82.1 | 82.3 | 82.4 | 70.6 | 12.9 | 9.4 | 9.0 | 8.8 | 8.8 | 8.8 | 8.9 | 4.2 |
| 12 Month CPR | 59.6 | 59.8 | 60.0 | 48.3 | 10.9 | 6.8 | 6.3 | 6.0 | 5.8 | 5.7 | 5.6 | 3.1 ▼ |

 *Ginnie* Mae

# Summary

**Summary**

| | |
|---|---|
| Pool: | 192885 |
| CUSIP: | 36217GF28 |
| Security Type: | MBS |
| Issue/Pool Type: | GI SF |
| Issuer ID: | 3162 |
| Issuer Name: | MIDFIRST BANK |
| Termination Date: | 11/25/2016 |
| Status: | Terminated |
| As Of Date: | 12/2016 |
| Pool Issue Date: | 12/01/1986 |
| Maturity Date: | 12/15/2016 |
| Security Interest Rate: | 9.000 |
| Original Balance: | $25,531,671.15 |

# ENCL 13:

Bloomberg Screen (17 February 2022)

identifying GNMA CUSIP NO. 36216GUZ9

and GINNIE MAE Data Search Summary;

| GN 164500 | Paid Off | | | --/-- | Yield --/-- | | | Coupon 9.000% | | -- |
|---|---|---|---|---|---|---|---|---|---|---|
| As of -- | Prepay -- | | | Ginnie Mae I Pool | | | | | | |

GN 164500 Mtge        Page 1/2  Security Description
100% GNSF 9 S    9.500(0)360 CUSIP 36216GUZ9   Pool Level   999 Day   99 Sell
Summary   Benchmark

| Pool | GN 164500 | | | | | 16) Seasoning | GNSF 9 S | | | As Of | | 06/2016 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type | (SF) 15/30 years Level pay | | | | | 17) Vintage | GNSF 9 1986 | | | Issue Date | | 07/01/1986 |
| Traits | 30/360 | | | | | | | | | Maturity Date | | 06/15/2016 |
| 11) Seller | MIDFIRST BANK | | Issuer | GNMA | | | | | | | | |

| 12) Pool Information | PDI | | | | | | | | | Balance | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Coupon | 9.000 | WAC* | | | 9.500 | Orig WAC* | | 9.500 | Factor | | | Paid Off |
| | | WARM* | | 0 | Orig WAM* | | | 359 | Orig Amt | | | 75,008,176 |
| | | WALA* | | 360 | | | | | Curr Amt | | | |

| 13) Collateral Information | CLC | | | | | | | | | Prepay | | CPR | PSA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WAOLTV* | 98 | AOLS | | 54,294 | | | | | 1 Month | | 0.0 | 0 |
| WAOLTV-HPI* | 37 | WAOLS | | 54,455 | | | | | 3 Month | | 62.6 | 1043 |
| | | | | | Green Bond | | N | | 6 Month | | 66.1 | 1102 |
| | | WAOLT* | | 360 | | | | | 1 Year | | 48.1 | 801 |
| | | | | | | | | | Life | | 19.5 | 337 |
| 14) # Loans | 0 | Delay | 44 ( 14 ) | | | | | | 18) States | | | %UPB |
| | | | | | | | | | Illinois | | | 100.0 |
| | | | | | | | | | Minnesota | | | 0.0 |

15) Paydown Information | PDI PERF        *Value calculated by Bloomberg

| Prepay History | Jun16 | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Month CPR | 0.0 | 89.7 | 49.0 | 27.5 | 17.2 | 95.2 | 44.7 | 33.3 | 25.5 | 3.6 | 2.7 | 2.2 |
| 3 Month CPR | 62.6 | 66.4 | 32.6 | 69.3 | 71.9 | 73.9 | 35.0 | 21.8 | 11.3 | 2.8 | 2.2 | 2.0 |
| 6 Month CPR | 66.1 | 69.3 | 58.1 | 55.3 | 53.1 | 51.9 | 20.5 | 12.5 | 6.7 | 2.3 | 2.1 | 2.2 |
| 12 Month CPR | 48.1 | 48.2 | 37.5 | 33.9 | 32.3 | 31.4 | 11.7 | 7.3 | 4.1 | 1.8 | 1.5 | 1.3 |

Thanks,



# Summary

## Summary

| | |
|---|---|
| Pool: | 144500 |
| CUSIP: | 36216GU79 |
| Security Type: | MBS |
| Issue/Pool Type: | GI SF |
| Issuer ID: | 3162 |
| Issuer Name: | MIDFIRST BANK |
| Termination Date: | 06/23/2016 |
| Status: | Terminated |
| As Of Date: | 06/2016 |
| Pool Issue Date: | 07/01/1986 |
| Maturity Date: | 06/15/2016 |
| Security Interest Rate: | 9.000 |
| Original Balance: | $75,008,175.80 |

# ENCL 14:

Email from Jonathan Hughes, GNMA Supervisory

Sr. Account Executive,

Office of Issuer and Portfolio Management,

on 25 February 2022,

notifying Wilcox that a GNMA review is in progress

by the Office of Security Operation;

Firefox

https://outlook.live.com/mail/0/inbox/id/AQMkADAwATIwM

Fwd: Investor Inquiry   Wilcox

Dana Wilcox <dvwilcox@gmail.com>

Fri 2/25/2022 4:15 PM

To: Roger Boyer <rboy1962@gmail.com>; Don Baker <dcb@paddockpool.com>; Bill Fortner <bill@williamfortner.com>; pii-mcc@msn.com <pii-mcc@msn.com>

Sent from my iPhone

Begin forwarded message:

> **From:** "Hughes, Jonathan H" <Jonathan.H.Hughes@hud.gov>
> **Date:** February 25, 2022 at 10:46:51 AM EST
> **To:** Dana Wilcox <dvwilcox@gmail.com>
> **Subject: Investor Inquiry - Wilcox**

Hi Mr. Wilcox - just to providing you with an update. Ginnie Mae is reviewing your inquiry and our Office of Security Operation will be conducting the research.

**Jonathan Hughes**
Supervisory Sr. Account Executive
Office of Issuer and Portfolio Management
425 Third Street SW
Washington, DC 20024
202.475.8827 office / 202.329.3682 cell
Jonathan.H.Hughes@HUD.gov / www.ginniemae.gov



# ENCL 15:

Email from Ms. Chastity M. Abrom,

Senior Business Analyst,

Office of Securities Operations (GINNIE MAE),

to Wilcox stating the results of a search for above

referenced GNMA CUSIPS, et al..

## Fwd: GNMA Certificates

Dana Wilcox <dvwilcox@gmail.com>
Tue 3/8/2022 11:24 AM
To: pii-mcc@msn.com <pii-mcc@msn.com>

Sent from my iPhone

Begin forwarded message:

**From:** "Abrom, Chastity M" <Chastity.M.Abrom@hud.gov>
**Date:** March 8, 2022 at 9:57:13 AM EST
**To:** dvwilcox@gmail.com
**Subject: GNMA Certificates**

Good Morning,

I work in the Office of Securities Operations at Ginnie Mae. I will be happy to assist you with your inquiry.

Based on your information, I researched and verified that Pool # 192885 was issued in December 1986 and paid down in November 2016. In addition, pool # 164500 was issued in July 1986 and paid down in June 2016.

The provided certificate numbers JB-2067 and JB-2034 could not be verified as Ginnie Mae certificates. We also searched registered certificate holders in the pools mentioned above. We did not find any certificates issued to "Delmarva Timber Trust" or "The Consultancy." Do you have copies of the Ginnie Mae certificates in question?

I am currently working remotely. However, we can set up a time to discuss this matter further. I am available weekdays from 7-4:30 PM EST at 202-494-6216

*Regards,*
*Ms. Chastity Abrom*
Senior Business Analyst
FAC-COR Level III
FAC P/PM Senior, IT Core Plus Specialization
Office of Securities Operations, Operations Division
Chastity.M.Abrom@hud.gov
Ph: (202) 475-7913
Cell: (202) 494-6216



# ENCL 16:

Email letter from Stewart M. Spettel,

DIRECTOR OF OPERATIONS,

Office of Securities  Operations,

to Dana V. Wilcox,

dated 29 March 2022,

stating tht the GNMA Securities "have been paid in full"

and that "Ginnie Mae cannot be a party to any dispute…"

## Fwd: Dana Wilcox - Ginnie Mae Pools 192885 & 164500

Dana Wilcox <dvwilcox@gmail.com>

Tue 3/29/2022 4:00 PM

To: pit-mcc@msn.com <pit-mcc@msn.com>

Sent from my iPhone

Begin forwarded message:

> **From:** "Spettel, Stewart M" <Stewart.M.Spettel@hud.gov>
> **Date:** March 29, 2022 at 1:22:46 PM EDT
> **To:** dvwilcox@gmail.com
> **Cc:** "Abrom, Chastity M" <Chastity.M.Abrom@hud.gov>
> **Subject: Dana Wilcox - Ginnie Mae Pools 192885 & 164500**

> As a follow up to our discussion May 25 and your earlier correspondence: Our records indicate that the pools/CUSIPS you referenced have been paid in full. The Ginnie Mae guarantee is implicated only when principal and interest on GNMA securities are unpaid. In light of the fact that these particular securities have been paid in full, we have concluded that Ginnie Mae cannot be a party to any dispute that you may, or may not, have with your investment vehicles and partners.

> Should you have information to the contrary please do not hesitate to contact us.

> Regards
> SMS

> Stewart M. Spettel, DIRECTOR OF OPERATIONS
> Office of Securities Operations
> 425 3rd Street SW
> Washington, DC 20024
> 202.475.7811 office
> Stewart.M.Spettel@HUD.gov · www.ginniemae.gov

> 

# ENCL 17:

Letter from Dana V. Wilcox to Bank of New York Mellon

Legal Department /Chief Compliance Officers ,

dated April 25, 2022,

requesting a formal bank letterhead notification

regarding the bank's position, AS "BANK NOMINEE" and

GINNIE MAE'S TRANSFER AGENT,

regarding the disposition of the investment and interest payments

of said GNMA CUSIP purchases / transfer of December 18, 1990,

et al..

(5)  Letter VIA email to Dana V.  Wilcox

From Anthony R. Mancuso, Vice President, Bank of New York Mellon

Dated April 11, 2022;

Re:  Request for Bank of New York Mellon letterhead response

Dear Compliance Officers:

Federal Express has furnished evidence that the Notarized Affidavit of April 4th (Ref # 4) was delivered to your offices.  This document was an official request for restitution of funds legally deposited, on my behalf and held within sub-accounts of Owen C. Meddles / Delmarva in your institution SINCE 1991, per description within the letter to Anthony R. Mancuso (Ref # 3).  This letter identified and addressed the Fiduciary responsibilities as stated within Judge Carr's granting the Bank of New York the powers of BANK NOMINEE over said accounts, et al., (Ref # 3, page 2, Item # 8).

As of this date, I have not received the requested funds nor a legal response from your offices / the Bank of New York, except an email from Mr. Mancuso, stating that the "Bank has no such funds" and the matter is "closed."

Therefore, I request that an official bank letterhead with your signatures and counter signatures attached be submitted to me --- stating the official Bank of New York Mellon position on this matter.  This request is made so that I and my consultants may decide the next step and action we will take regarding the restitution of the funds and other recourse that may be necessary to right this wrong (Ref # 4).

Your response is hereby requested to be in my hands no later than the close of business MAY 10, 2022.

Thank You,

Dana V. Wilcox

517 Neeley Store Road

Rockhill, South Carolina, 29730

Initial / Date _____

Page | 2