IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DANA V. WILCOX, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. 1:22-cv-01240 (PTG/JFA) |
| ) | |
| RAE OLIVER DAVIS, *et al.*, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## MEMORANDUM ORDER

This matter comes before the Court on Defendants' Motions to Dismiss Plaintiff's Complaint (Dkt. 1). Dkts. 7, 10. Plaintiff filed this action alleging violations of the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*, the Securities Act of 1934, 15 U.S.C. §§ 78a *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 18 USCS §§ 1961 *et seq.* The Complaint named the following six defendants: (1) the Honorable Rae Oliver Davis, Office of the Inspector General, U.S. Department of Housing and Urban Development ("HUD"); (2) Alanna McCargo, President of Ginnie Mae; and (3) Stewart Spettel, Director of Operations for the Office of Securities Operation for Ginnie Mae (collectively, "Federal Defendants"); as well as (4) Julia Braithwaite, (5) Jacueline Joyston-Bachel[1], and (6) Anthony Mancuso (collectively, "BNY[2] Mellon Defendants"). Federal Defendants and BNY Mellon Defendants filed separate Motions to Dismiss. Dkts. 7, 10. Defendants advised Plaintiff, who is proceeding *pro se*, that the Motions to

---

[1] The Complaint misspells Ms. Joyston-Bachel's last name as "Joyston-Bachal." Dkt. 1 at 3. Ms. Joyston-Bachel has not been served. Dkt. 7 at 1 n.1. Without waiving her objection to service, she joins BNY Mellon Defendants' Motion to Dismiss. *Id.*

[2] BNY stands for "The Bank of New York." *Id.* at 1.

Dismiss could be granted on the papers if Plaintiff failed to file a response within twenty-one (21) days of his filing. *See* Local Rule 7(K); *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

On March 10, 2023, Plaintiff filed Plaintiff's Answer to Sovereign Immunity and Motion to Grant Subpoena(s) to Produce Documents, which the Court construes as a response to Federal Defendants' Motion to Dismiss. Dkt. 22. That same day, Plaintiff filed a Motion to Grant Subpoena(s) to Produce Documents in a Civil Action, in which Plaintiff requested that discovery commence. Dkt. 23. The court subsequently denied this Motion without prejudice due to the pending Motions to Dismiss. Dkt. 25.[3]

To date, Plaintiff has not formally filed a response to BNY Mellon Defendants' Motion to Dismiss. However, on April 18, 2023, Plaintiff filed Plaintiff's Motion to Quash Defendant's *Roseboro* Notice Motion(s) for Dismissal, in which Plaintiff reiterated his stance pertaining to the claim of sovereign immunity and appeared to briefly address the permanent injunction argument raised in BNY Mellon Defendants' Motion to Dismiss. Dkt. 26. This Court will construe Plaintiff's Motion to Quash (Dkt. 26) as a response to BNY Mellon Defendants' Motion to Dismiss.[4] The Court finds that oral argument will not aid in the resolution of this matter. Having reviewed the aforementioned filings, and finding good cause, the Court grants Defendants' Motions to Dismiss.

---

[3] On August 16, 2023, while the instant motions were pending, Plaintiff filed an additional Motion to Grant Subpoena(s) to Produce Documents in a Civil Case and a Motion for Hearing. Dkts. 28, 30. As noted in a previous order denying Plaintiff's prior motion for subpoenas, discovery does not begin until this Court issues an order opening discovery after a ruling on a motion to dismiss. *See* Dkt. 25.

[4] On August 16, 2023, Plaintiff also filed Plaintiff's Motion to Dismiss Defendant's *Roseboro* Notice Motion(s) for Dismissal. Dkt. 29. In that Motion, Plaintiff referenced his previous filings, which the Court now construes as responses to Defendants' Motions to Dismiss, and once again asked that the Court deny the Motions to Dismiss and allow discovery to commence. *Id.*

## Background

On November 2, 2022, Plaintiff, proceeding *pro se*, sued each of the named defendants alleging violations of the Securities Act of 1933, the Securities Act of 1934, and RICO. Dkt. 1. This lawsuit relates to an alleged investment to purchase new U.S. Bonds for an intergovernmental project that Plaintiff identifies as the "Chinese World Trade Agreement Project." *Id.* at 5. The Complaint alleges that this project was completed in the late 1980s and that funds to which he was entitled were transferred to various accounts. *Id.* at 5–6, 8. In his attempts to locate the funds, Plaintiff conducted an "investigation[,]" including contacting HUD, Ginnie Mae, and BNY Mellon. *Id.* at 7. Plaintiff seeks damages in the amount of $853,384,134.80. *Id.* at 8.

Federal Defendants moved to dismiss this action for lack of subject matter jurisdiction and failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 10. BNY Mellon Defendants moved to dismiss because a federal injunction entered by U.S. District Court for the Northern District of Ohio permanently enjoins Plaintiff from suing BNY Mellon. Dkt. 7. BNY Mellon Defendants also moved to dismiss for failure to state a claim and lack of personal jurisdiction. *Id.*

## Legal Standard

Federal district courts are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Lack of subject matter jurisdiction is raised in a motion under Federal Rule of Civil Procedure 12(b)(1). *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1994). The plaintiff bears the burden of establishing that subject matter jurisdiction is proper by a preponderance of the evidence when the

defendant challenges subject matter jurisdiction. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

### I. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims Against Federal Defendants

Plaintiff has sued Federal Defendants for damages for claims arising under federal securities laws and RICO. Dkt. 1. Federal Defendants argue that sovereign immunity bars Plaintiff's suit. Dkt. 11 at 8–11. More specifically, they assert that the federal government and its agencies are immune from suit absent a waiver, and that sovereign immunity has not been waived for these claims. *Id.* at 8. Accordingly, Federal Defendants argue that the Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Id.* at 8–9. They are correct.

The federal government has "long enjoyed freedom from suit without consent in federal courts." *Robinson v. U.S. Dep't of Educ.*, 917 F.3d 799, 801 (4th Cir. 2019). The U.S. Supreme Court has further explained that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). A statutory waiver of sovereign immunity must be unambiguous and unequivocal. *Robinson*, 917 F.3d at 802; *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied." (citation omitted)).

Plaintiff brings this suit against Federal Defendants in their official capacities. Dkt. 1 at 2. As a suit against a government official in their official capacity is, in effect, a suit against the government entity, *see McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 n.2 (1997), the doctrine of sovereign immunity extends to Federal Defendants in this case. As noted above, the Complaint alleges that Federal Defendants have violated various provisions of the federal securities laws and

4

RICO. Dkt. 1 at 4. Neither the statutory text of the federal securities laws nor that of RICO offer an unambiguous and unequivocal waiver of sovereign immunity to permit Plaintiff to bring this suit against Federal Defendants.

Federal securities laws do not provide a waiver of sovereign immunity for suit against the federal government. *See, e.g., Safeway Portland Emps.' Fed. Credit Union v. FDIC*, 506 F.2d 1213, 1216 (9th Cir. 1974) ("The Securities Act makes no reference to a specific waiver of immunity by the sovereign United States[.]"); *Kolb v. Naylor*, 658 F. Supp. 520, 525 (N.D. Iowa 1987) ("Nothing in the . . . Securities Act expressly waives sovereign immunity."); *SEC v. Better Life Club of Am., Inc.*, 995 F. Supp. 167, 180 (D.D.C. 1998) (noting that the Federal Tort Claims Act "reserves immunity for claims based on discretionary regulatory functions," which includes investigating and prosecuting under § 21 of the Securities Acts).

Similarly, the RICO statute does not explicitly and clearly, or by its statutory history, establish an intention to waive sovereign immunity of the federal government and its agencies. *See, e.g., Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) ("[I]t is clear that there can be no RICO claim against the federal government."); *Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 856 (E.D. Va. 2016) ("RICO . . . does not mention, much less waive, sovereign immunity." (citation omitted)); *Lewis v. United States*, No. TDC-20-2253, 2021 WL 6339604, at *2 (D. Md. Aug. 6, 2021) ("RICO itself does not contain an express waiver [of sovereign immunity] and this Court is not aware of any other statute that provides such a waiver for RICO." (citation omitted)). Therefore, because sovereign immunity bars Plaintiff's claims against Federal Defendants, this Court lacks jurisdiction to hear these claims. Accordingly, the Court need not explore any additional grounds for dismissal presented by Federal Defendants.

District courts have discretion to determine if further amendment to a complaint would be futile. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Dismissal with prejudice is warranted where "amendment would be futile in light of the [complaint's] fundamental deficiencies." *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008). In this case, for the foregoing reasons, the Court finds Plaintiff cannot cure the jurisdictional issue related to his Complaint against Federal Defendants, and further amendment would be futile.[5] Accordingly, the Court dismisses these claims with prejudice.

## II. The Permanent Injunction Bars Plaintiff's Claims Against BNY Mellon Defendants

The Complaint also raises claims against BNY Mellon Defendants under the federal securities laws and RICO. Dkt. 1 at 4–8. BNY Mellon Defendants argue that Plaintiff's suit is barred by a permanent injunction issued by the U.S. District Court for the Northern District of Ohio. Dkt. 8 at 8. BNY Mellon Defendants assert that this case is part of "a long history of litigation" concerning a fraud scheme of which BNY Mellon[6] was a victim and that involved some of the same parties and transactions that appear to be at the crux of the Complaint. *See id.* at 2, 4–5. BNY Mellon Defendants contend that the federal case that exposed the fraudulent scheme

---

[5] In support of its Motion to Dismiss, Federal Defendants correctly note that a prospective plaintiff may seek redress from a federal official by filing a common law tort claim against the United States under the Federal Tort Claims Act ("FTCA"), Dkt. 11 at 8, which Plaintiff failed to do. Even if Plaintiff pursued his claim against Federal Defendants under the FTCA, such a claim would remain futile because the only proper defendant in an FTCA action is the United States, not particular federal agencies. *Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965) (stating that the FTCA does not permit claims against federal agencies). Additionally, Plaintiff cannot assert his RICO and securities law claims against Federal Defendants under the FTCA because "the FTCA does not waive the United States' immunity against liability for [alleged] violation of its own statutes[.]" *Williams v. United States*, 242 F.3d 169, 173 (4th Cir. 2001) (citing and quoting *United States v. Agronics Inc.*, 164 F.3d 1343, 1346 (10th Cir.1999) ("'The underlying principle is that the FTCA's waiver of sovereign immunity is limited to conduct for which a private person could be held liable under state tort law,' not federal statutory law")).

[6] The party in the action before the U.S. District Court for the Northern District of Ohio was the Bank of New York, BNY Mellon's predecessor. *See* Dkt. 7 at 5 n.5.

6

resulted in the issuance of a 2005 permanent injunction prohibiting multiple parties, including Plaintiff, from "directly or indirectly, fil[ing], commenc[ing], initiat[ing], prosecut[ing], pursu[ing], join[ing] or submit[ting] any lawsuit, legal proceeding, arbitration, garnishment, collection action, levy, action or claim against the Bank [of New York.]" *Id.* at 9 ((quoting *Sine v. Bank of New York*, No. 3:03-cv7662, ¶ 6 (N.D. Ohio Mar. 23, 2005) [hereinafter "2005 Injunction"]) (filed at Dkt. 8-2)). Consequently, BNY Mellon Defendants argue that by bringing this suit, Plaintiff violates a binding, permanent federal injunction. *Id.*

Plaintiff claims that he is not enjoined from filing this civil action because he was not a party to the previous case that gave rise to the 2005 Injunction, citing an order from the U.S. District Court for the Northern District of Ohio, which noted that Plaintiff was not a party to the previous proceedings. Dkt. 26 at 2 (citing Dkt. 1-1 at 54). BNY Mellon Defendants concede that Plaintiff was not a party to the Ohio proceedings but argue that Plaintiff was nevertheless an interested party who was afforded an opportunity to be heard in those proceedings. Dkt. 8 at 5 n.6. Thus, at issue here is whether the 2005 Injunction is binding as applied to Plaintiff; and if it is binding, the level of deference, if any, this Court must give to the 2005 Injunction.

Although Plaintiff was not a party to the previous proceedings before the U.S. District Court for the Northern District of Ohio, BNY Mellon Defendants are correct that Plaintiff is bound by the injunction. While it is generally true that an injunction cannot bind a non-party to a legal proceeding, *see Feller v. Brock*, 802 F.2d 722, 726 (4th Cir. 1986), the Federal Rules of Civil Procedure provide that an injunction *is* binding on the "parties' officers, agents, servants, employees, and attorneys" as well as "other persons who are in active concert or participation with" the parties or their officers, agents, or employees who "receive actual notice of the injunction by personal service or otherwise[,]" Fed. R. Civ. P. 65(d)(2)(B), (C).

7

Here, the 2005 Injunction explicitly listed Plaintiff as a party who may be considered an employee, agent, representative, or officer of one of the parties to be enjoined by the injunction. Dkt. 8-2 ¶ 2f ("'Delmarva Parties' shall mean any and all current, future and/or former trustees, advisors, beneficiaries, employees, agents, attorneys, representatives, officers, directors, principals, shareholders and/or investigators, including, but not limited to . . . Dana V. Wilcox[.]"). Furthermore, the 2005 Injunction expressly directed the clerk to serve a copy of the order to Plaintiff, *id.* ¶ 11, giving Plaintiff actual notice of the injunction and its application to him. Thus, although Plaintiff was not a party to the previous proceedings, he was clearly and explicitly named as a party in interest to be bound by the permanent injunction.

Having found that Plaintiff is bound by the 2005 Injunction, the question remaining is whether this Court must defer to the U.S. District Court for the Northern District of Ohio's judgment. It is commonly recognized that a federal district court's decision is not binding on a district court in the same or different judicial district. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citing 18 J. Moore *et al.*, Moore's Federal Practice § 134.02[1] [d] (3d ed. 2011)). A federal court therefore has discretion in deciding whether to defer or cite to another district court's decision for its persuasive effect; and often, this determination is "formulated in terms of the notion of comity." 18 J. Moore *et al.*, Moore's Federal Practice at § 134.02[1] [d].

When presented with a similar issue, the Fourth Circuit held that a district court abused its discretion by issuing a preliminary injunction directly in conflict with another federal district court's permanent injunction. *Feller*, 802 F.2d at 727. The Fourth Circuit based its rationale on comity, explaining that "[p]rudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders." *Id.* at 727–28. The Fourth Circuit explained that there is "an

8

underlying policy of judicial administration which counsels against the creation of conflicts" because such conflicts are a "disservice to the public interest[.]" *Id.* at 727–28.

Here, Plaintiff's requested relief in the form of monetary damages is based on transactions and alleged claims to funds that were at the heart of prior legal proceedings before the U.S. District Court for the Northern District of Ohio. *See* Dkt. 1-1 at 51–52; Dkt. 8-2 at 1–2. As noted above, in issuing the 2005 Injunction, the U.S. District Court for the Northern District of Ohio expressly enjoined several parties, including Plaintiff, from, among other things, "[f]iling any action or claim . . . for any asset owned, held by, or registered in the name of [Bank of New York][.]" *Id.* ¶ 5(e). Therefore, permitting Plaintiff to proceed with this action against BNY Mellon Defendants would stand in direct conflict with a valid injunction issued by a coordinate federal court. The decision to allow this case to go forward would not only go against circuit precedent but would also effectively condone Plaintiff's continual violation of a federal injunction, which is against public interest. As such, in recognition of Fourth Circuit precedent and underlying principles of comity, this Court defers to the U.S. District Court for the Northern District of Ohio's judgment. Consequently, this Court finds that the 2005 Injunction, issued by the U.S. District Court for the Northern District of Ohio, bars Plaintiff's Complaint against BNY Mellon Defendants. Accordingly, this action is dismissed with prejudice with respect to BNY Mellon Defendants.[7]

\*\*\*

Accordingly, upon consideration of Defendants' Motions to Dismiss (Dkts. 7, 10), and the accompanying filings, it is hereby

---

[7] Given this ruling, the Court need not explore any additional grounds for dismissal presented by BNY Mellon Defendants.

**ORDERED** that Federal Defendants' Motion to Dismiss (Dkt. 10) is **GRANTED**; and it is further

**ORDERED** that BNY Mellon Defendants' Motion to Dismiss (Dkt. 7) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion to Grant Subpoena(s) to Produce Documents in a Civil Case (Dkt 28), Plaintiff's Motion to Dismiss Defendant's *Roseboro* Notice Motion(s) for Dismissal (Dkt. 29), and Plaintiff's Motion for Hearing (Dkt. 30) are **DENIED AS MOOT**; and it is further

**ORDERED** that the case is hereby **DISMISSED WITH PREJUDICE**.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of the Court within thirty (30) days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Order to Plaintiff, who is proceeding *pro se*.

Dated: August 28, 2023
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge

10